**John Terrell DUNKLIN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 12–04–00254–CR.**

Court of Appeals of Texas,
Tyler.

April 28, 2006.

Wm. Randell Johnson, Plano, Donna C. Peavler, Uloth & Peavler, LLP, Dallas, for appellant.

Donna R. Bennett, Dist. Atty., Barry L. Spencer, Jr., Asst. Dist. Atty., Athens, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and DeVASTO, J.

## OPINION

SAM GRIFFITH, Justice.

John Terrell Dunklin was convicted by a Henderson County jury for aggravated assault on a public servant. The jury sentenced him to imprisonment for five years, probated for five years. The trial court imposed sentence in accordance with the jury verdict, but also required Appellant to serve not less than sixty days or more than one hundred twenty days of imprisonment as a condition of probation. Appellant filed a motion for new trial, which the trial court denied after a hearing. Appellant raises four issues on appeal. We affirm.

### BACKGROUND

Appellant was charged with endangering a child and aggravated assault on a public servant. According to the testimony at trial, three Henderson County sheriff's deputies went to Appellant's home to serve a misdemeanor warrant on Appellant for an assault on his ex-wife. The deputies went to Appellant's house at night without activating their emergency lights, walked up a long driveway, and climbed over a locked gate. When they reached the darkened house, they knocked on the door. The deputies testified that they identified themselves as sheriff's deputies. Appellant's seven year old son, Colton, opened the door and admitted the men. The deputies spread out in the dark room and turned their flashlights on Appellant, who was lying on the couch. He had a badly injured leg from a previous meeting with his ex-wife during which, according to Appellant, she struck him with her car. The deputies testified that when they told Appellant he was being arrested on the warrant, Appellant said he could not go to jail because he had a broken leg. Appellant then quickly stood up, pointed the shotgun at Deputy Gabbard, and said he was not going to jail. The deputies testified that, in a matter of seconds, Appellant pointed the shotgun at himself and called his son over to him. He then lay down on the couch and laid Colton on his chest. Ultimately, Appellant was arrested after one of the deputies convinced Appellant to put down the shotgun.

Appellant testified that he was startled by the sudden intrusion of unidentified men shining flashlights on him in his darkened living room and pointed his shotgun at those he perceived as intruders. Appellant testified that when the deputies identified themselves and said they were there to arrest him on a warrant, Appellant pointed the shotgun at himself.

The jury found Appellant guilty of aggravated assault on a public servant, but found him not guilty of endangering a child. The jury sentenced Appellant to imprisonment for five years, probated for five years. The trial court imposed Appellant's sentence in accordance with the jury's verdict, but also required Appellant to serve not less than sixty days or more than one hundred twenty days of imprisonment as a condition of probation. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12 § 3g(b) (Vernon Pamph. Supp.2005). Appellant filed a motion for new trial, which was denied after a hearing. This appeal followed.

### MOTION FOR NEW TRIAL

In his first issue, Appellant contends that the trial court erred in denying his motion for new trial.

### Standard of Review

 It is well established that the granting or denying of a motion for new trial lies within the discretion of the trial court. *Lewis v. State,* 911 S.W.2d 1, 7 (Tex.Crim.App.1995). Therefore, the standard of review for a trial court's ruling on a motion for new trial is abuse of discretion. *State v. Gonzalez,* 855 S.W.2d 692, 696 (Tex.Crim.App.1993). In reviewing for an abuse of discretion, an appellate court will reverse the trial court's ruling only when that decision is so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *Id.* at 695 n. 4. A trial court abuses its discretion when it grants a new trial without reference to any guiding rules or principles or, in other words, when the act was arbitrary or unreasonable. *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex.Crim.App.1990). In the absence of contrary evidence, it is presumed on appeal that the trial court properly exercised its discretion. *Beard v. State,* 385 S.W.2d 855, 856 (Tex.Crim.App. 1965).

### Appellant's Motion for New Trial

Appellant asserted three issues in his motion for new trial: (1) the verdict was contrary to the law and evidence, (2) the jury committed misconduct, and (3) the trial court erred in denying Appellant's requested charge on a lesser included offense. The first and third issues raised in Appellant's motion for new trial are addressed in separate issues elsewhere in this opinion. Therefore, in our discussion of Appellant's first issue, we address only the argument relating to jury misconduct.

The affidavit of a juror was attached to Appellant's motion for new trial. In the affidavit, the juror stated that he and two other jurors did not believe Appellant was guilty, but agreed to the guilty verdict because the other jurors promised to give Appellant probation with no jail time. The State objected to the affidavit at the hearing on the motion for new trial, and the trial court sustained the objection. *See* Tex.R. Evid. 606(b). Appellant called no witnesses at the hearing.

Appellant argues that Rule 606(b) does not require the exclusion of the juror's affidavit. Specifically, Appellant argues that (1) Texas Rule of Evidence 606(b) conflicts with Texas Rule of Appellate Procedure 21.3 and that (2) the application of Texas Rule of Evidence 606(b) denies Appellant his constitutional rights to due process and a fair trial before an impartial jury, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and article I, section 15 of the Texas Constitution.

### Applicable Law and Analysis

 Texas Rule of Evidence 606(b) provides as follows:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes. However, a juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.

Tex.R. Evid. 606(b). Texas Rule of Appellate Procedure Rule 21.3 provides that a juror must be granted a new trial "when the jury has engaged in such misconduct that the defendant did not receive a fair

and impartial trial." Tex.R.App. P. 21.3(g). Appellant contends that a literal application of Texas Rule of Evidence 606(b) prevents him from establishing the jury misconduct that, under Rule 21.3(g), mandates a new trial. This issue has frequently been addressed and resolved contrary to Appellant's position. *See, e.g., Hines v. State*, 3 S.W.3d 618, 620–23 (Tex.App.-Texarkana 1999, pet. ref'd) (holding that Rules 606(b) and 21.3 work together, without conflict, to define jury misconduct and provide how it may be proved); *Sanders v. State*, 1 S.W.3d 885, 886–88 (Tex.App.-Austin 1999, no pet.) (finding no conflict between Rules 606(b) and 21.3).

■ As to Appellant's constitutional arguments, the United States Supreme Court has rejected a claim that Federal Rule of Evidence 606(b), which is the source of Texas Rule 606(b), violates a defendant's Sixth Amendment right to a fair jury trial. *Tanner v. United States*, 483 U.S. 107, 126–28, 107 S.Ct. 2739, 2750–51, 97 L.Ed.2d 90 (1987). At least one Texas court has held that Rule 606(b) does not violate a criminal defendant's federal due process rights. *Glover v. State*, 110 S.W.3d 549, 552 (Tex.App.-Waco 2003, pet. ref'd). Similarly, Texas courts have also held that the application of Texas Rule of Evidence 606(b) does not violate a defendant's rights under article I, section 15 of the Texas Constitution. *See, e.g., Hines*, 3 S.W.3d at 622–23; *Sanders*, 1 S.W.3d at 888.

■ Finally, Appellant contends that his allegation of juror misconduct was further substantiated by a jury question to the court during its deliberations in the guilt/innocence phase. The jury's question to the trial court was "[r]efresh us on minimum + [sic] maximum punishment for both, including probation." The court responded, "Do not consider the issue of punishment. Follow your instructions.

Your sole duty at this time is to determine the issue of guilt." The trial court's response to the jury's question was correct. An appellate court generally presumes the jury follows the trial court's instructions. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim.App.1998). Appellant cannot use the juror's affidavit to prove otherwise. *See* Tex.R. Evid. 606(b). The case cited by Appellant, *Escarcega v. State*, 711 S.W.2d 400 (Tex.App.-El Paso 1986, pet. dism'd, improvidently granted), antedates the present version of Rule 606(b) and does not apply here.

The State objected to Appellant's affidavit in support of his motion for new trial. In the affidavit, the juror discussed the deliberations of the jurors, which is the type of information that is excluded by Rule 606(b). *State v. Lewis*, 151 S.W.3d 213, 219–20 (Tex.App.-Tyler 2004, pet. ref'd); *see also* Tex.R. Evid. 606(b). The trial court properly granted the State's objection. Appellant presented no admissible evidence to support his allegation of jury misconduct during deliberations. Consequently, the trial court did not abuse its discretion in denying a new trial on this ground. Appellant raises the remaining grounds urged in his motion for new trial—error in the jury charge and sufficiency of the evidence—as his second and fourth issues, respectively, in this appeal. As more particularly discussed below, we overrule those issues. Consequently, the trial court did not err in overruling Appellant's motion for new trial on either of those grounds. Appellant's first issue is overruled.

## LESSER INCLUDED OFFENSE

In his second issue, Appellant contends the trial court erred in failing to charge the jury on the lesser included offense of resisting arrest. Appellant requested a charge on resisting arrest, but did not

provide the text of the requested charge to the trial court.[1]

### Applicable Law

An offense is a lesser included offense if

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX.CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981).

The Texas Court of Criminal Appeals has established a two part test to determine if a charge on a lesser included offense is required. *See Aguilar v. State,* 682 S.W.2d 556, 558 (Tex.Crim.App.1985) (citing *Royster v. State,* 622 S.W.2d 442 (Tex.Crim.App.1981)). First, the lesser included offense must be included with the proof necessary to establish the offense charged. *Aguilar,* 682 S.W.2d at 558. Secondly, some evidence must exist in the record that if the defendant is guilty, he is guilty only of the lesser offense. *Id.* Stated in different terms, the defendant must be guilty of the lesser offense, but not of the greater. *Pickens v. State,* 165 S.W.3d 675, 679 (Tex.Crim.App.2005).

■ In reviewing a trial court's decision to deny a requested jury charge for a lesser included offense, the appellate court considers the charged offense, the statutory elements of the lesser offense, and the evidence actually presented at trial. *Hayward v. State,* 158 S.W.3d 476, 478 (Tex. Crim.App.2005). More specifically, the court (1) examines the statutory elements of the charged offense as modified by the indictment, then (2) examines the elements of the claimed lesser included offense to see if the elements are functionally the same as or less than those required to prove the charged offense, and, finally, (3) examines the evidence actually presented to prove the elements of the charged offense to see if that proof also shows the lesser included offense. *Id.* at 478–79.

### Analysis

■ The amended indictment on which the parties proceeded to trial alleged that Appellant

did then and there intentionally or knowingly threaten W. GABBARD with imminent bodily injury and did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said assault, and the defendant did then and there know that the said W. Gabbard [sic] was then and there a public servant, to-wit: a police officer with the Henderson County Sheriff's Department, and that the said W. GABBARD was then and there lawfully discharging an official duty, to-wit: attempting to arrest the defendant.

The elements of the offense of aggravated assault on a public servant, as charged in the indictment, are (1) a person; (2) commits an assault; (3) against a person the

---

1. Although providing a requested special charge in writing or by dictating the charge into the record is the specified manner of creating a record for appeal, *see* TEX.CODE CRIM. PROC. ANN. 36.14, 36.15 (Vernon Supp. 2005), the record reflects that an extensive jury charge conference was conducted in this case. Therefore, we will review the issue.

actor knows is a public servant; (4) while the public servant is lawfully discharging an official duty; and (5) uses or exhibits a deadly weapon during the commission of the assault. TEX. PEN.CODE · ANN. § 22.02(a)(2), (b)(2) (Vernon Supp.2005). As relevant to this case, assault is defined as a person intentionally or knowingly threatening another person with imminent bodily injury. *Id.* § 22.01(a)(2).

By contrast, the elements of the offense of resisting arrest are that a person (1) intentionally prevents or obstructs; (2) a person he knows is a peace officer; (3) from effecting an arrest of the actor; (4) by using force against the peace officer. *Id.* § 38.03(a) (Vernon 2003). The offense is a third degree felony if the actor used a deadly weapon to resist the arrest. *Id.* § 38.03(d). Thus, the offense of aggravated assault as charged in the indictment required an element, threatening Gabbard with imminent bodily injury, that resisting arrest did not. Further, resisting arrest required proof of two elements the aggravated assault did not: (1) preventing or obstructing a peace officer from effecting an arrest and (2) using force against the peace officer. *See Ortega v. State,* 171 S.W.3d 895, 899–900 (Tex.Crim.App.2005). Consequently, all elements of the claimed lesser included offense are not, as charged and as established by the evidence in this case, included within the elements and the proof necessary to establish the offense charged. Moreover, the evidence did not show that Appellant was guilty of the lesser offense, but not of the greater offense. *See Pickens,* 165 S.W.3d at 679. Thus, in the present case, based on the evidence before the jury, resisting arrest was not established as a lesser included offense of the indicted offense of aggravated assault on a peace officer. Therefore, the trial court did not err in denying Appellant's requested charge on the offense of resist-ing arrest. Appellant's second issue is overruled.

### EVIDENTIARY RULINGS

In his third issue, which includes three subissues, Appellant contends the trial court made three erroneous evidentiary rulings that individually and cumulatively had a substantial and injurious influence on the jury. Appellant first complains that the trial court erroneously admitted improper character evidence and · allegations of insurance fraud. Appellant further contends the trial court erred in excluding evidence about the propriety of the deputies' entry onto Appellant's property to serve the warrant.

### Standard of Review

■ Appellate courts review evidentiary rulings under an abuse of discretion standard. *Martin v. State,* 173 S.W.3d 463, 467 (Tex.Crim.App.2005). Moreover, a trial court ruling on the admission of evidence will be upheld if the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made. *Id.*

### Admission of Photographs

Appellant complains that the trial court erred in admitting the photographs of Jessica Schwab, whose injuries were the basis for the arrest warrant the officers were serving on Appellant. Specifically, Appellant argues that the photographs were not produced to Appellant in compliance with the trial court's discovery order, were not relevant, were inadmissible character evidence, and were unduly prejudicial.

■ *Failure to produce photographs in discovery.* When a defendant requests discovery, the trial court may order the state to produce and permit the inspection and copying of the items the

defendant requested to be discovered. Tex.Code Crim. Proc. Ann. art. 39.14(a) (Vernon Supp.2005). The order must specify the time, place, and manner of obtaining the discovery. *Id.* Evidence that is willfully withheld from disclosure under a discovery order should be excluded from trial. *Jackson v. State,* 17 S.W.3d 664, 673 (Tex.Crim.App.2000). Evidence is willfully withheld if the act is done "voluntarily and intentionally, with the specific intent to disobey the law." *State v. LaRue,* 108 S.W.3d 431, 434 (Tex.App.-Beaumont 2003), *aff'd,* 152 S.W.3d 95 (Tex.Crim.App. 2004).

Appellant filed a motion for discovery requesting production and disclosure of all physical evidence the State would seek to admit at trial. The trial court signed its standard discovery order that required the State, on or before December 10, 2001, to provide Appellant the opportunity to inspect all photographs to be introduced at trial. The order further provided that "the Defense should exercise reasonable diligence to contact the State's attorney and arrange a mutually convenient time for the appointment." The State filed a response in which it noted that all physical objects and photographs to be introduced were "available for inspection in the District Attorney's office."

At trial, Appellant forcefully cross examined the deputies about why they failed to call Appellant to come in instead of bringing several deputies in the dark of night to arrest him. Appellant testified that he did not know why three deputies would come to arrest him. The State asked whether the reason could have been Appellant's history of violence, which Appellant denied. The State then sought to admit the photographs of Ms. Schwab's injuries to suggest the reason for the deputies' concern for their safety, and Appellant objected. The trial court ruled that the State's

further questioning was invited after Appellant's cross examination of the deputies. The court further noted that the State was entitled to rebut Appellant's challenge to the deputies' conduct and methods. Appellant's counsel stated that the photographs were not provided to Appellant pursuant to the signed discovery order. The prosecutor noted that the photographs were from the file in a previously tried misdemeanor assault case, which Appellant's counsel had tried. Appellant's counsel did not deny that he had seen the photographs during the previous trial. The prosecutor also informed the court that he had not initially intended "on going down this road" and had done so only because Appellant denied his history of violence. Appellant disputed the State's contention pointing out that the State had given notice of its intent to introduce the offense against Ms. Schwab as an extraneous offense.

■ We cannot conclude from this record that the State willfully withheld the photographs. Therefore, the trial court did not abuse its discretion in admitting the photographs. Moreover, Appellant did not contend that he was surprised or otherwise disadvantaged by the introduction of the photographs. Consequently, even if admission of the photographs was error, Appellant cannot show harm. *See Ramirez v. State,* 815 S.W.2d 636, 649 (Tex. Crim.App.1991).

■ *Relevance and inadmissible character evidence.* Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Tex.R. Evid. 401. With few exceptions, evidence of a person's character or character trait is not admissible for the purpose of proving action in conformity therewith on a particular occasion.

TEX.R. EVID. 404(a). To be admissible, such evidence must generally be relevant beyond its tendency to show character conformity. *See Montgomery*, 810 S.W.2d at 387 (op. on reh'g).

Most often, evidence of an extraneous offense is inadmissible, not because it is without legal relevance but because it is inherently prejudicial, tends to confuse the issues in the case, and forces the accused to defend himself against charges that he had not been notified would be brought against him. *Crank v. State*, 761 S.W.2d 328, 341 (Tex.Crim.App.1988); *see also* TEX.R. EVID. 403. Probably the most common situation that gives rise to the admission of extraneous offenses is rebuttal of a defensive theory. *Crank*, 761 S.W.2d at 341. Whether or not the state may prove a collateral crime is somewhat dependent upon the burden of proof imposed on the state and the type of evidence the state has to offer to prove the essential elements of its case in chief. *Id.* In some limited circumstances, evidence of extraneous offenses may become admissible where the effectiveness of the state's evidence, though uncontradicted by other evidence, is completely undermined by defense cross examination. *Id.*

■■ Evidence of an extraneous offense for which a defendant has been acquitted has generally been held inadmissible under the Double Jeopardy Clause of the United States and Texas constitutions and under the principle of collateral estoppel. *See Dedrick v. State*, 623 S.W.2d 332, 336 (Tex. Crim.App. [Panel Op.] 1981); *Stuart v. State*, 561 S.W.2d 181, 182 (Tex.Crim.App. 1978). Significantly, however, evidence of an extraneous offense for which a defendant has been acquitted may be introduced into evidence against the defendant in a subsequent trial where the prior acquittal did not determine an ultimate issue in the subsequent case. *Dowling v. United States*, 493 U.S. 342, 348, 110 S.Ct. 668, 672, 107 L.Ed.2d 708 (1990).

In the present case, whether Appellant assaulted Ms. Schwab was not at issue. However, the alleged assault of Ms. Schwab formed the basis for the arrest warrant the deputies went to serve. In his defense, Appellant questioned why the deputies chose to serve the arrest warrant in the dark of the night. The deputies explained that in light of Ms. Schwab's injuries, they anticipated that Appellant's response to the arrest could be physical, which caused them concern for their safety. Accordingly, they decided to go at night with three deputies to apprehend Appellant. When the deputies served the arrest warrant two days after the alleged assault on Ms. Schwab, there had been no jury verdict acquitting Appellant on the assault charges. On rebuttal, the State sought to explain the deputies' actions and to adequately establish their state of mind. In doing so, the State introduced evidence of the alleged assault on Ms. Schwab, including the photographs of Ms. Schwab's injuries. The trial court held that the evidence was admissible, was rebuttal to the defense Appellant raised, and was invited by the defense. The trial court's ruling was correct. Therefore, we conclude that the photographs were relevant beyond the issue of character conformity.

Because an ultimate issue in the instant case was not determined in the assault case, we hold that the trial court did not abuse its discretion in admitting the testimony and the photographs regarding the alleged assault that was the basis of the arrest warrant.

■■ *Prejudicial nature of photographs.* Appellant contends the prejudicial effect of the photographs of Ms. Schwab's injuries outweighed the probative value of the photographs. Evidence, although relevant, may be excluded if its

probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. TEX.R. EVID. 403. A proper Rule 403 analysis includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex.Crim.App. 2004). In evaluating the need for the evidence, the evaluation must consider (1) whether the proponent has other available evidence to establish the fact of consequence that the photograph is relevant to show; (2) the strength of the other evidence; and (3) whether the fact of consequence is related to an issue that is in dispute. Where the Rule 403 challenge relates to photographs, the analysis also includes factors such as the number and size of the photographs, whether they are color or black and white, and whether they are gruesome. *Id.* A photograph admitted as evidence should add something that is relevant, legitimate, and logical to the testimony that accompanies it and assists the jury in its decision making duties. *Id.* at 491. If there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects. *Id.* at 491–92.

In the present case, the defense made an issue of the deputies' serving an arrest warrant on Appellant at night and strongly questioned whether there was a legitimate reason for seeking an arrest warrant for Ms. Schwab's assault. Because the defense made the underlying assault a significant issue, the State was entitled to provide a more complete account of the events leading up to Appellant's arrest. The photographs were probative to establish the legality of the deputies' presence at Appellant's home. This factor weighs in favor of admission. Testimony about Ms. Schwab's injuries is included in the record, and the photographs merely portray Ms. Schwab's bruises and injuries. Although the State introduced four photographs at trial, only two of those photographs are included in the record. These two photographs show Ms. Schwab with a bruised, swollen eye and an injured lip. The photographs are approximately five inches by seven inches in size. Although the photographs are reproduced in black and white for the record, they appear to be copies of color photographs. The injuries depicted were neither gruesome nor shocking. Neither of these photographs were sufficient to indelibly impress the jury in some irrational way. This second factor also weighs in favor of admission. Little time was needed to introduce the photographs, and the deputy's testimony about Ms. Schwab's injuries covers less than one page of the record. This factor weighs in favor of admission. Although the deputy could have described Ms. Schwab's injuries, the photographs rebutted, better than mere words, Appellant's contention that the deputies' response to the injuries—getting an arrest warrant and serving the warrant in the dark of the night with three deputies—was excessive. The jury was able to see the injuries and evaluate Appellant's claim in light of what they saw. Although the State could have proved Ms. Schwab's injuries without the photographs, the jury could more fully comprehend the nature of the injuries by reviewing the photographs. Consequently, the fourth factor, the State's need for the evidence, weighs in favor of admission.

Based upon our application of the factors enumerated in *Erazo,* we hold that

the trial court did not err in admitting the photographs. Appellant's first subissue is overruled.

### Insurance Fraud Allegations

■ Appellant complains that the trial court erred by permitting the State to adduce testimony regarding insurance fraud charges pending against Appellant. The State contends Appellant raised the issue by testimony that Appellant had reported several times that his house had been burglarized. Appellant developed this testimony to explain why he had a shotgun beside his couch when the deputies came in. The State then introduced testimony that after investigating the burglaries, the sheriff's office filed insurance fraud charges against Appellant. The State contended at trial that Appellant had raised the issue of the insurance fraud cases as well as the issue of Appellant's state of mind, knowledge, and intent regarding the burglaries.

After cross examining Officer Gabbard about the location of Appellant's shotgun and other facts, Appellant's trial counsel requested a bench conference. During the conference, counsel explained to the court that he wanted to "ask [Gabbard] about the prior reports of a burglary at [Appellant's] house which I believe Officer Gabbard is aware ... which all go to [Appellant's] state of mind that evening and his reasonable apprehension and fear of someone coming in the house." Appellant's counsel then asked Officer Gabbard about Appellant's reporting several burglaries of his home shortly before the date the deputies served the arrest warrant.

In response, the State noted that Appellant's counsel used the reference to the burglaries to establish Appellant's "knowledge and intent and state of mind." The State sought to undermine Appellant's contention that the burglaries had led him to have the shotgun at hand and to quickly point it at the deputies. The court permitted the State to develop, through Officer Gabbard's testimony, that the sheriff's office had investigated the alleged burglary cases and had developed pending insurance fraud cases against Appellant regarding the alleged burglaries.

■ Evidence of other crimes, wrongs, or acts generally is not admissible to prove character conformity, but may be admissible for other purposes, such as proof of motive, opportunity, intent, or absence of mistake or accident. TEX.R. EVID. 404. Extraneous offense evidence may become admissible to help prove intent only if the intent required for a conviction for the primary offense is a contested issue in the case. *McGee v. State*, 725 S.W.2d 362, 364 (Tex.App.-Houston [14 Dist.] 1987). Intent can be characterized as a contested issue if (1) the required intent for the primary offense cannot be inferred from the act itself or (2) the accused presents evidence to rebut an inference that the required intent existed. *Id.* Intent is most clearly in issue when the defendant argues that the charged offense was unintentional or the result of an accident. *Johnson v. State*, 932 S.W.2d 296, 302 (Tex.App.-Austin 1996, pet. ref'd). Once the defendant makes a claim such as accident, mistake, or lack of intent, then intent can no longer be inferred from other uncontested direct evidence, and the state is allowed to prove intent through evidence of other crimes, wrongs, or acts. *Id.* (defendant's offer of partial confession that he did not mean to kill decedent and testimony of ballistics expert to show gun shot higher than point of aim placed intent at issue and allowed admission of other robbery with gun).

In the case at hand, Appellant raised the issue of the burglaries, as he explained to the court, to establish Appellant's "state of mind that evening and his reasonable apprehension and fear of someone coming in

the house." This evidence, in turn, would show Appellant's lack of intent to commit the charged offense. However, the jury was entitled to a balanced presentation of this crucial issue. If, for example, there were actual burglaries, the jury could find that it was reasonable for Appellant to have a shotgun next to his couch and to quickly aim the gun at whoever entered his house. This finding could result in a conclusion that the State failed to prove the required scienter. But if the alleged burglaries were investigated by the sheriff's office who found the allegations to be unsubstantiated and prepared insurance fraud cases against Appellant, the jury, as the judge of the facts in the case, might be inclined to disbelieve Appellant. The jury was entitled to hear the complete testimony regarding the burglaries in order to determine Appellant's intent. Having raised the issue, Appellant was not entitled to present only a portion of the facts to the jury. We hold the trial court did not err in permitting the State to more fully develop the facts surrounding the burglaries. Appellant's second subissue is overruled.

### Legality of Deputies' Presence

██ Appellant contends the trial court erred in excluding testimony regarding whether Deputy Gabbard was "lawfully discharging an official duty" at the time of the assault. Appellant sought to adduce testimony regarding whether the arrest warrant was valid, arguing that if the arrest warrant was invalid, the deputies could not have been "lawfully discharging an official duty" when they entered Appellant's home. Because "lawfully discharging an official duty" is an element of the charged offense for which the State had the burden of proof, Appellant contends that he should have been permitted to offer evidence refuting this element. Appellant further contends that if the warrant was not valid and Gabbard knew of and was responsible for its invalidity, the

evidence impeaches Gabbard's credibility and motives for accusing Appellant of assault.

Appellant filed a motion to suppress, which was denied after a hearing. In his motion to suppress, Appellant alleged that the arrest warrant was invalid because it was not dated and the affidavit for the arrest warrant is dated July 10, 2001, although the date of the offense was July 26, 2001. Appellant further alleged that because the actual arrest warrant was not dated and the date of the affidavit was before the date of the offense, the deputies unlawfully trespassed on Appellant's property when they were serving the warrant. The affidavit in the record shows that all the dates on the affidavit are printed in the same typeface as the other information on the affidavit. The first date, above affiant Gabbard's signature, is "the 28th day of July, 2001." The date above the magistrate's signature on the jurat and the date above the magistrate's finding of probable cause and issuance of the arrest warrant are both "this 10th day of July 2001." No date was indicated in the blanks left for the date of issuing the arrest warrant. The Sheriff's Return stated: "Came to hand on the 28th [handwritten] day of July [handwritten], 2001 — A.D. at —— o'clock ——.M., and executed on the 31 [handwritten] day of July [handwritten] A.D.2001, by arresting the within named John Dunklin [handwritten]."

Appellant has primarily focused his attention upon the July 10, 2001 date on the affidavit and the failure of the magistrate to date the arrest warrant. However, he cites no authority in support of his assertion that the appearance of the July 10 date on the arrest warrant renders the warrant fatally defective. Therefore, Appellant has waived this issue. *See* Tex. R.App. P. 38.8(h). Moreover, mere techni-

cal defects or typographical errors do not automatically render an arrest warrant fatally defective. *Rougeau v. State,* 738 S.W.2d 651, 663 (Tex.Crim.App.1987).

■ At the hearing, Deputy Gabbard testified that he spoke to Jessica Schwab on July 26 and that he filled out the affidavit on July 28. Gabbard explained that the two July 10 dates were on the arrest form he had used, that he had simply failed to replace them with the correct date of July 28, and that the July 10 date was a typographical error. Judge Sue Starnes, Justice of the Peace for Precinct Three in Henderson County, issued the warrant. Judge Starnes testified that the correct date for the signing of the affidavit and the issuance of the warrant should have been July 28, 2001. She also testified that the July 10 date was a typographical error. The court admitted into evidence the relevant page of Judge Starnes's criminal docket book, which shows the arrest warrant for John Dunklin was issued July 28, 2001. This evidence establishes that the July 10 date is a typographical error. Therefore, even if the issue had been preserved, we could not conclude that the trial court abused its discretion in excluding the evidence challenging the validity of the arrest warrant. Appellant's third subissue is overruled.

### Cumulative Effect of Errors

The thrust of Appellant's third issue is that the cumulative effect of these three evidentiary rulings harmed him. Because Appellant has not shown error, we do not address harm. Appellant's third issue is overruled.

### SUFFICIENCY OF THE EVIDENCE

In his fourth issue, Appellant contends that the evidence was legally and factually insufficient to support his conviction. Specifically, he argues that there was insufficient evidence to support that he knew Gabbard was a peace officer. Appellant does not challenge the sufficiency of the evidence to support any of the other elements of the offense.

### Legal Sufficiency

■ Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia,* 443 U.S. 307, 315–16, 99 S.Ct. 2781, 2786–87, 61 L.Ed.2d 560 (1979); *see also Escobedo v. State,* 6 S.W.3d 1, 6 (Tex.App.-San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson,* 443 U.S. at 320, 99 S.Ct. at 2789; *see also Johnson v. State,* 871 S.W.2d 183, 186 (Tex.Crim. App.1993). The evidence is examined in the light most favorable to the jury's verdict. *See Jackson,* 443 U.S. at 320, 99 S.Ct. at 2789; *Johnson,* 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida,* 457 U.S. 31, 41–42, 102 S.Ct. 2211, 2217–18, 72 L.Ed.2d 652 (1982).

To support a conviction for aggravated assault of a public servant in the instant case, the State must show that Appellant (1) committed an assault; (2) against a person he knew was a public servant; (3) while the public servant was lawfully discharging an official duty; and (4) used or exhibited a deadly weapon during the commission of the assault. *See* TEX. PEN.CODE ANN. §§ 22.01(a)(2); 22.02(a)(2), (b)(2). A person is presumed to have known the person assaulted was a public servant if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant. *Id.* § 22.02(c).

In reviewing the evidence in the light most favorable to the verdict, the record reveals that the deputies were wearing their uniforms and badges when they knocked on Appellant's door, identified themselves as law enforcement officers, and entered the house when the door was opened. Prior to the aggravated assault, the deputies also explained to Appellant that they were there to arrest him on a warrant. This is legally sufficient evidence that Appellant knew Deputy Gabbard was a public servant. Therefore, we hold that the evidence was legally sufficient to support the jury's verdict. Appellant's fourth issue, as to legal sufficiency, is overruled.

### Factual Sufficiency

In reviewing factual sufficiency, we consider all the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it to the evidence that tends to disprove that fact. *See Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, *see Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App.1996), our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of the witness testimony. *See Santellan,* 939 S.W.2d at 164. Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *See Van Zandt v. State,* 932 S.W.2d 88, 96 (Tex.App.-El Paso 1996, pet. ref'd). As the court of criminal appeals explained in *Zuniga,* "There is only one question to be answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in its finding of guilt beyond a reasonable doubt?" *See Zuniga,* 144 S.W.3d at 484.

Viewing the evidence in a neutral light, we also consider contrary evidence such as the darkness of the room, which could have impaired Appellant's ability to see the deputies' uniforms and badges, and Appellant's testimony that the officers did not identify themselves until after he had pointed the shotgun at them. The contrary evidence was not sufficient to undermine the integrity of the verdict. We hold the evidence is factually sufficient to support a finding that Appellant knew Deputy Gabbard was a public servant. Therefore, the evidence is factually sufficient to support the jury's verdict. Appellant's fourth issue, as to factual sufficiency, is overruled.

### CONCLUSION

Having overruled Appellant's issues one, two, three, and four, we *affirm* the judgment of the trial court.