

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| PAUL HAGE, | § | No. 08-10-00270-CR |
| Appellant, | § | Appeal from |
| v. | § | 243rd District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 20100D02084) |

**O P I N I O N**

Paul Hage is appealing his convictions of aggravated assault on a public servant (fifteen counts). A jury found Appellant guilty and assessed his punishment at a fine of $3,750 and imprisonment for twenty-two years on each count. We affirm.

**FACTUAL SUMMARY**

Appellant and his mother lived at a house in El Paso. On April 10, 2008, Appellant's nephew, Arthur Ibarra, went to the residence and discovered that Appellant was confused and disoriented. Appellant did not recognize Ibarra and was ranting about who was outside the house. Ibarra's cousin, Christopher Contreras, had been at the house earlier that day and Appellant did not recognize him. Appellant thought Contreras was someone he had seen on television who was wanted by law enforcement. Ibarra told Appellant that it was Contreras who had been at the house earlier and not the person on television but Appellant did not believe him.

Ibarra was concerned about the situation escalating because Contreras wanted to return to the house and Ibarra considered Contreras to be a "hothead." The police arrived a short time later.

Officer Eduardo Martinez and his partner, Officer Ruben Villa, were dispatched to the residence and were advised that it was a family fight in progress involving a weapon. When they arrived in the area, Appellant's cousin and another individual met with the officers a few houses away from Appellant's home. Because of the nature of the call, Martinez and Villa waited for another patrol unit to arrive to assist them in securing the residence. After the other officers arrived, Martinez and Villa entered the residence. They cleared the residence except for Appellant's bedroom. Appellant was inside of the bedroom playing loud music. They took cover in a bathroom near the bedroom door and identified themselves as police officers but Appellant would not respond. The officers knocked on the bedroom door for several minutes but Appellant would not answer them or open the door. Martinez remained in the residence while Villa went outside to notify their supervisor of the situation. After about fifteen minutes, the music stopped and Martinez took the opportunity to identify himself as a police officer and tell Appellant that he was there to help him. Appellant opened the door partially but slammed it shut again and turned on the music again. After fifteen more minutes of trying to make contact with Appellant, another officer, Delia Duarte, arrived at the scene. After a while, Appellant turned down the music again and Duarte was able to talk with him but he sounded confused. Appellant eventually stopped communicating with Duarte and turned the music on again. He later opened the door and had what appeared to be a broomstick in his hand. Martinez shined a flashlight at Appellant's face, ordered him to drop what he had in his hands, and to put up his hands.

Appellant closed the bedroom door again. Martinez made an in-court identification of Appellant as the person he saw in the bedroom. Two SWAT officers arrived at the scene and provided cover for Martinez while he knocked on the door and attempted to communicate with Appellant. Appellant opened the door a third time and, after looking down the hallway toward the SWAT officers, said that there were too many guns before retreating back into the bedroom. Martinez and Villa were relieved from their posts by the SWAT team.

Detective John Cataldi of the El Paso Police Department is a negotiator on the crisis management team. The crisis management team deploys with the SWAT team when the police department is dealing with a barricaded subject such as Appellant. After being notified of the situation, Cataldi went to the command post near Appellant's residence and met with the team leader. Cataldi and another negotiator, Detective Monica Pennington, entered the house and took cover approximately ten to fifteen feet from the door to Appellant's bedroom while trying to communicate with him. Initially, Detective Pennington tried to talk with Appellant but he told her that he was going to call the police. She told him that they were the police and he said that it was over between them. It sounded to the officers as if Appellant was confusing her with an old girlfriend. Appellant became more agitated so Cataldi began trying to talk to Appellant. The negotiators were having trouble talking to Appellant because of the loud music coming from the bedroom so the police department cut the power to the house. Appellant began yelling and the officers could hear heavy objects being moved around the room. Cataldi told Appellant that he wanted to talk to him but Appellant said he was going to put on headphones in order to block out the sound. The negotiators then decided to attempt communication through the public address

system set up outside of Appellant's bedroom because it was louder.

Pennington and Officer Michael Baranyay used the PA in an effort to communicate with Appellant for approximately an hour and a half but those efforts were unsuccessful. The SWAT team broke one of the bedroom windows in order to introduce a small camera called a R-1 Eyeball into the bedroom. Cataldi was operating the R-1 Eyeball but he was unable to see anything because the device got stuck between the window ledge and the blinds covering the window. While attempting to move the R-1 Eyeball, Cataldi suddenly heard the sound of gunfire coming from the bedroom and he saw the muzzle of a gun sticking out between some of the blinds. Cataldi remembered counting seven gunshots but he knew there had been more than seven.

Detective Armando Nanez could tell that the gun was being fired from Appellant's bedroom window because he could see the debris from the blinds coming out of the window with each shot. Nanez testified that a total of fourteen shots were fired.

Officer Ricardo Montes was covering the back of the house when the eyeball camera was deployed through the window. He heard gunshots and saw a curtain move as the gunshots were fired from inside of the bedroom. Montes could hear the gunshots striking a fence at the rear of the house and some of the gunshots hit a piece of metal in the backyard. Montes heard a total of fourteen gunshots and he was in fear for his own life and the safety of his fellow SWAT officers. At that point, the SWAT team decided to introduce teargas into the bedroom. Shortly after the SWAT team deployed the gas, Appellant emerged from the bedroom and the police took him into custody. When asked where the weapon was, Appellant denied having a gun and told

Detective Nanez that he had been lighting firecrackers. Nanez instructed another officer to locate the gun using a thermal imager. The officer scanned the bedroom with the thermal imager and found a .22 caliber handgun in a clothes basket in Appellant's bedroom.

Police officers processed the interior and exterior of the residence for evidence as well as a church parking lot and fence located south of the residence. Officer Benjamin Mitchell photographed and collected some shell casings found by Appellant's bedroom window. He went to the nearby church and photographed metal plates mounted on a chain link fence at the church which had bullet holes in them. He also photographed and collected bullet fragments found in the church parking lot.

Joseph Correa is a firearms and toolmark examiner for the Texas Department of Public Safety. Correa tested the .22 caliber firearm collected from Appellant's bedroom and determined that it is a working firearm. According to Correa, the effective range of a .22 caliber bullet is 100 yards but a .22 caliber bullet can travel a mile and a half. He examined the bullet fragments collected in this case but due to their condition, he could not determine whether they had been fired by the submitted firearm. He did, however, determine that the cartridge cases found in Appellant's bedroom had been fired by the submitted firearm.

Appellant was charged with fifteen counts of aggravated assault on a public servant. The indictments alleged that Appellant intentionally or knowingly threatened fifteen different police officers with imminent bodily injury while the officers were lawfully discharging an official duty, and he used or exhibited a deadly weapon, namely, a firearm, during the commission of each offense, and Appellant knew that each officer was a public servant. A jury found Appellant

guilty of each count as alleged in the indictment. The jury also made an affirmative deadly weapon finding.

## LESSER-INCLUDED OFFENSES

In his first issue, Appellant contends that the trial court erred by failing to instruct the jury on the lesser-included offenses of resisting arrest, deadly conduct, and assault. A trial court's decision to submit or deny an instruction on a lesser-included offense is reviewed for an abuse of discretion. *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex.Crim.App. 2004). An offense is a lesser included offense if:

> (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged.
>
> (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;
>
> (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
>
> (4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX.CODE CRIM.PROC.ANN. art. 37.09 (West 2006). We utilize a two-pronged test to determine whether a charge on a lesser-included offense should be given: (1) Is the requested charge for a lesser-included offense of the charged offense? (2) Is there trial evidence that supports giving the instruction to the jury? *Rice v. State*, 333 S.W.3d 140, 144 (Tex.Crim.App. 2011); *McKinney v. State*, 207 S.W.3d 366, 370 (Tex.Crim.App. 2006).

### *Resisting Arrest*

We will first consider whether the trial court erred by failing to instruct the jury on

resisting arrest. The first step is to determine whether the lesser-included offense is included within the proof necessary to establish the offense charged. *Rice*, 333 S.W.3d at 144; *Hall v. State*, 225 S.W.3d 524, 531 (Tex.Crim.App. 2007). This is a question of law, and it does not depend on the evidence to be produced at trial. *Rice*, 333 S.W.2d at 144. Texas has adopted the cognate pleadings approach to the first step of the lesser included offense analysis: "the elements and the facts alleged in the charging instrument are used to find lesser-included offenses." *Rice*, 333 S.W.3d at 144, *quoting Hall*, 225 S.W.3d at 535. The first prong is satisfied if the indictment for the greater-inclusive offense either: (1) alleges all of the elements of the lesser-included offense, or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, which are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced. *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex.Crim.App. 2009).

In reviewing a trial court's decision to deny a requested jury charge for a lesser included offense, the appellate court considers the charged offense, the statutory elements of the lesser offense, and the evidence actually presented at trial. *Hayward v. State*, 158 S.W.3d 476, 478 (Tex.Crim.App. 2005). More specifically, the appellate court (1) examines the statutory elements of the charged offense as modified by the indictment, then (2) examines the elements of the claimed lesser included offense to see if the elements are functionally the same as or less than those required to prove the charged offense, and, finally, (3) examines the evidence actually presented to prove the elements of the charged offense to see if that proof also shows the lesser included offense. *Id*. at 478-79.

The indictment charged Appellant with fifteen counts of aggravated assault of a public servant. The elements of this offense are: a person intentionally or knowingly threatens another with imminent bodily injury (assault) and the actor uses or exhibits a deadly weapon during the commission of the assault, and the offense is committed against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty. *See* TEX.PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2), 22.02(b)(2)(B)(West 2011). A person commits the offense of resisting arrest if he intentionally prevents or obstructs a person he knows is a peace officer from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another. TEX.PENAL CODE ANN. § 38.03(a)(West 2011). An offense under Section 38.03 is a third degree felony if the actor uses a deadly weapon to resist the arrest or search. TEX.PENAL CODE ANN. § 38.03(d).

Aggravated assault against a public servant, as charged in the indictment, requires proof that Appellant threatened each of the fifteen officers with imminent bodily injury, while resisting arrest requires proof that Appellant actually used physical force against any officer effecting his arrest. The aggravated assault charge against Appellant as set out in each count of the indictment did not require proof that Appellant used force against each of the fifteen officers nor did it require proof that the officers were effecting an arrest of Appellant at the time he used force against each of them. The aggravated assault charge only required proof that Appellant threatened imminent bodily injury against each officer and he used or exhibited a firearm during the commission of the assault. The evidence admitted at trial shows that Appellant actually used force by firing the weapon at the officers, but there is no evidence that the officers were

attempting to arrest him for any offense prior to him taking that action. Because resisting arrest requires proof of an element not found in aggravated assault as charged and proven in this case, it is not a lesser-included offense and the trial court did not err by refusing to instruct the jury on resisting arrest. *See Dunklin v. State*, 194 S.W.3d 14, 22 (Tex.App.--Tyler 2006, no pet.)(holding that defendant convicted of aggravated assault against public servant based on threatening police officer was not entitled to lesser-included-offense instruction on resisting arrest, which required use of force).

## *Deadly Conduct*

A person commits deadly conduct if he recklessly engages in conduct that places another person in imminent danger of serious bodily injury. TEX.PENAL CODE ANN. § 22.05(a)(West 2011). Deadly conduct under Section 22.05(a) is a Class A misdemeanor. TEX.PENAL CODE ANN. § 22.05(e). A person also commits deadly conduct if he knowingly discharges a firearm at or in the direction of one or more individuals. TEX.PENAL CODE ANN. § 22.05(b)(1). This type of deadly conduct is a third degree felony. TEX.PENAL CODE ANN. § 22.05(e). As noted by the State in its brief, Appellant did not specify in the trial court whether he sought an instruction on the misdemeanor or felony offense, or both. On appeal, Appellant argues he was entitled to an instruction on both types of deadly conduct.

### 1. Misdemeanor Deadly Conduct

We begin by examining whether misdemeanor deadly conduct is a lesser included offense. The Court of Criminal Appeals has held that the misdemeanor offense of deadly conduct can be a lesser-included offense of aggravated assault, but it depends on the

circumstances presented in each case. *See Bell v. State*, 693 S.W.2d 434, 437 (Tex.Crim.App. 1985). The indictment alleged that Appellant used or exhibited a firearm, but the proof admitted at trial showed that Appellant actually used the firearm and fired it at the officers. Proof that a person threatened another with imminent bodily injury by the use of a deadly weapon constitutes proof of engaging in conduct that places another in imminent danger of serious bodily injury. *See Bell*, 693 S.W.2d at 438-39. Based on our examination of the statutory elements of the charged offense as modified by the indictment and the statutory elements of the lesser-included offense, as well as the evidence admitted at trial, we conclude that misdemeanor deadly conduct is a lesser-included offense of aggravated assault in this case. *Guzman v. State*, 188 S.W.3d 185, 190-91 (Tex.Crim.App. 2006); *Bell*, 693 S.W.2d at 439.

The second step of the lesser-included-offense analysis is to determine if there is some evidence in the record which would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Rice*, 333 S.W.3d at l45. In other words, the evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense. *Rice*, 333 S.W.3d at 145; *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex.Crim.App. 2000). If facts are elicited during trial that raise an issue of the lesser-included offense, and the charge is properly requested, then a charge must be given. *Ross v. State*, 861 S.W.2d 870, 877 (Tex.Crim.App. 1993)(op. on reh'g.).

Deadly conduct differs from aggravated assault in that it requires a less culpable mental state. The indictment alleged that Appellant intentionally or knowingly threatened each of the fifteen police officers with imminent bodily injury by using and exhibiting a deadly weapon. A

person acts intentionally when it is his conscious objective or desire to engage in the conduct or cause the result. TEX.PENAL CODE ANN. § 6.03(a)(West 2011). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct if he is aware of the nature of his conduct or that the circumstances exist. TEX.PENAL CODE ANN. § 6.03(b). Under Section 22.05(a), a reckless mental state is required. TEX.PENAL CODE ANN. § 22.05(a). A person acts recklessly with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. TEX.PENAL CODE ANN. § 6.03(c).

The State introduced evidence establishing that Appellant intentionally shot at the police officers. Several officers testified that some of the bullets fired by Appellant struck objects near where they had taken cover. One officer said that he heard the bullets "whizzing" by him. There is also evidence that Appellant shot the PA system twice. Given that the officers repeatedly attempted to communicate with Appellant through the PA system, Appellant's conduct in shooting the PA system supports a finding that he intentionally fired the gun at a target. All of this evidence supports a conclusion that Appellant intentionally threatened the officers with imminent bodily injury by firing the gun at them. The evidence admitted at trial does not show that Appellant recklessly fired the gun at or in the direction of the officers and Appellant has not directed our attention to any evidence from which it could be inferred that he committed the offense only recklessly. The record is void of any evidence to support such a conclusion. The trial court did not err by refusing to instruct the jury on misdemeanor deadly conduct.

- 11 -

## 2. Felony Deadly Conduct

A person commits felony deadly conduct if he knowingly discharges a firearm at or in the direction of one or more individuals. TEX.PENAL CODE ANN. § 22.05(b)(1). We conclude that felony deadly conduct can be a lesser-included offense of aggravated assault as charged in this case. Turning to the second step of the lesser-included offense analysis, we have already concluded that the evidence admitted at trial shows that Appellant intentionally fired the weapon at the police officers. Appellant has not cited and we have been unable to find any evidence which would support a finding that he did not act intentionally and instead acted only knowingly. Accordingly, the trial court did not err by denying the requested instruction on felony deadly conduct.

### *Misdemeanor Assault by Threat*

Appellant also requested an instruction on misdemeanor assault by threat. A person commits assault if he intentionally or knowingly threatens another with imminent bodily injury. TEX.PENAL CODE ANN. § 22.01(a)(2). This is a lesser-included offense of aggravated assault as alleged in the indictment. We now turn to the second part of the lesser-included offense test. There are two differences between misdemeanor assault by threat and aggravated assault as alleged here. First, misdemeanor assault does not involve the use or exhibition of a deadly weapon. If a person threatens another with imminent bodily injury and uses or exhibits a deadly weapon, he has committed aggravated assault under Section 22.02(a)(2). Second, the State was required to prove, in order to obtain a conviction for aggravated assault as alleged in the indictment, that Appellant threatened the officers with imminent bodily injury and Appellant

- 12 -

knew they were police officers who were carrying out an official duty. In order to be entitled to an instruction on misdemeanor assault, there must be evidence that Appellant did not use or exhibit a deadly weapon and he instead threatened the officers with imminent bodily injury by some other means. Appellant told the police officers when he exited his home that he did not have a weapon and he had only been lighting fireworks. This may be considered evidence that supports Appellant's claim that he did not use or exhibit a deadly weapon. There is, however, no evidence that Appellant intentionally or knowingly threatened the officers with imminent bodily injury through some other means. Consequently, the evidence does not support Appellant's theory that he is guilty of only the lesser-included offense. Having found that Appellant was not entitled to the requested instructions on resisting arrest, deadly conduct, and assault, we overrule Issue One.

## SUFFICIENCY OF THE EVIDENCE

In Issue Two, Appellant challenges the sufficiency of the evidence supporting his convictions. More specifically, he asserts that there is no evidence he fired a gun or that the gun recovered from his bedroom had been recently fired. He also argues that the State failed to prove that the bullet fragments recovered by the police had been fired by a .22 caliber gun.

### Standard of Review and Relevant Law

In reviewing whether the evidence is sufficient to support a criminal conviction, we apply the standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010). Under that standard, a reviewing court views all the evidence in the light most favorable to the prosecution to determine

whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex.Crim.App. 2012); *Brooks*, 323 S.W.3d at 894-95, *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. As the trier of fact, the jury is the sole judge as to the weight and credibility of witness testimony, and therefore, on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 894-95. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id*. On appeal, we serve only to ensure the jury reached a rational verdict, and we may not reevaluate the weight and credibility of the evidence produced at trial and in so doing substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). The sufficiency standard is the same for both direct and circumstantial evidence. *Wise*, 364 S.W.3d at 903. For the evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt. *Id*. Rather, a court considers only whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict. *Id*.

A person commits aggravated assault if he commits assault under Section 22.01 and the person uses or exhibits a deadly weapon during the commission of the assault. TEX.PENAL CODE ANN. § 22.02(a)(2). An assault occurs when a person intentionally or knowingly threatens another with imminent bodily injury. TEX.PENAL CODE ANN. § 22.01(a)(2). The offense is a first degree felony if the actor uses or exhibits a deadly weapon during the commission of the assault and the offense is committed against a person the actor knows is a public servant

- 14 -

while the public servant is lawfully discharging an official duty. TEX.PENAL CODE ANN. § 22.02(b)(2)(B). The indictment charged Appellant with fifteen counts of aggravated assault under these provisions. The State was required to prove beyond a reasonable doubt that Appellant intentionally or knowingly used or exhibited a deadly weapon to threaten each of the fifteen police officers with imminent bodily injury while knowing that each officer was a public servant who was lawfully discharging an official duty. Appellant restricts his argument on appeal to the proof related to the commission of the assault with a deadly weapon and he does not assert that the evidence is insufficient to prove that he knew the complainants were public servants discharging an official duty.

*Review of the Evidence*

The evidence at trial established that Appellant was the only person in the home at the time the officers heard and saw gunfire coming from Appellant's bedroom. Detective Cataldi was operating the R-1 Eyeball which was stuck between the window and the mini-blinds when he saw the muzzle of a gun and heard gunfire. Other officers heard the gunfire and determined that it was coming from Appellant's bedroom window because they saw the curtains around the move. At least one officer saw debris flying out of Appellant's bedroom window at the same time he heard the gunfire. Two bullets struck the public address system set up outside of the bedroom window. One officer saw a bullet strike a wooden fence near where he had taken cover. Another officer could hear bullets passing by him and he described the "whizzing" sound the bullets made. When Appellant finally emerged from the bedroom, he denied having a weapon and claimed he had only been lighting firecrackers, but the police used a thermal imager

- 15 -

to locate the gun hidden in a laundry basket of clothes. The gun was still warm from being recently fired. Appellant's concealment of the incriminating evidence and his attempt to explain away the sound of gunfire by claiming he had been lighting firecrackers evince a consciousness of guilt and are probative of wrongful conduct. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex.Crim.App. 2004)("Attempts to conceal incriminating evidence, inconsistent statements, and implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt."). The officers located shell casings near the bedroom window and those casings were matched to the gun found in the bedroom. Taken in the light most favorable to the verdict, the evidence is legally sufficient to permit a rational trier of fact to conclude beyond a reasonable doubt that Appellant committed the offense of aggravated assault against a public servant by firing the gun in the direction of the officers. *See Robbins v. State*, 145 S.W.3d 306, 314 (Tex.App.--El Paso 2004, pet. ref'd)(evidence that an individual shoots a firearm in the direction of a police officer is sufficient to support a conviction of aggravated assault). We overrule Issue Two and affirm the judgment of the trial court.

April 30, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating

(Do Not Publish)

- 16 -