COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-394-CR

CHARLES CLIFFORD BAILEY APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Charles Clifford Bailey appeals his conviction for indecency with a child.  
A jury found Bailey guilty, assessed his punishment at three years’ confinement, and recommended that the sentence be suspended and that Bailey be placed on community supervision.  The trial court sentenced Bailey to three years’ confinement, probated for six years.  In seven points, Bailey contends that the State committed a 
Brady
(footnote: 2) violation and interfered with his right to interview material witnesses who would provide exculpatory testimony; that the trial court erred by allowing improper scientific testimony and inadmissible hearsay statements, by erroneously charging the jury, and
 by entering a judgment based on an improper jury verdict; and that trial counsel provided ineffective assistance of counsel.  We will affirm.

II.  Factual and Procedural Background

In 1999, the grand jury indicted Bailey on two counts of aggravated sexual assault of a child younger than fourteen years of age by penile/vaginal penetration and by digital/vaginal penetration, one count of sexual assault of a child younger than seventeen years of age by penile/vaginal penetration, and one count of indecency with a child by touching her genitals.  Prior to voir dire, the State abandoned a second count of indecency with a child. 

At trial in 2003, the victim, C.G., testified that Bailey is her stepfather’s mother’s husband and that she spent time at Bailey’s house during the summer of 1996.  C.G. testified that the first sexual episode with Bailey occurred in the master bedroom during the summer of 1996; C.G. was sitting on the edge of the bed, facing the computer, and Bailey was sitting in the swivel chair.  C.G. said that Bailey turned the chair around, reached down, grabbed her feet, and began rubbing them.  C.G. stated that Bailey proceeded to rub her knees and thighs before putting his fingers inside the leg of her shorts and into her panties.  C.G. testified that Bailey put his fingers inside her vagina for a couple of minutes and then took his fingers out. 

A couple of weeks later, still during the summer of 1996, Bailey started rubbing C.G.’s feet, legs, knees, and thighs while she was on the bed.  C.G. said that Bailey began pulling down her shorts and then her panties; he pulled down his shorts and then took her panties off.  C.G. testified that Bailey rubbed her vagina with his fingers and tried to insert his penis into her vagina.  C.G. stated that Bailey was at first unable to insert his penis, but then he made it erect, pulled her hips to the edge of the bed, and inserted his penis into her vagina.  C.G. testified that Bailey kept his penis in her vagina for about five minutes, moved up and down, pulled his penis out, and ejaculated into a white towel on the side of the bed. 

One day while Bailey’s wife was at work, Bailey and C.G. played Nintendo, and Bailey asked C.G. to sit on his lap.  C.G. said that Bailey put his hands over her breasts and rubbed them and put his tongue in her mouth.

The next time that something sexual happened, C.G. and Bailey were in the master bedroom.  C.G. said that she was on the bed, and Bailey was in the swivel chair at the computer.  C.G. testified that Bailey turned around and put his legs around hers and proceeded to rub her feet, legs, knees, and thighs.  C.G. stated that she was still thirteen years old when this event occurred. 

C.G. also testified regarding a time when she had sex with Bailey when she was fourteen.  She said that they were in the large bedroom upstairs, and they had sex in her bed.  She said that he put his finger in her vagina first; then, he told her to get on top of him, and he put his penis into her vagina and moved her hips.  

After hearing the above testimony, as well as the testimony from other witnesses, the jury found Bailey guilty of indecency with a child — sexual contact, 
assessed his punishment at three years’ confinement, and recommended that the sentence be suspended and that Bailey be placed on community supervision.  The trial court sentenced Bailey to three years’ confinement, probated for six years.  
Bailey attempted to appeal his conviction but filed his notice of appeal one day late, resulting in the dismissal of his appeal.  
See Bailey v. State
, No. 02-03-00374-CR, 2003 WL 22456990, at *1 (Tex. App.—Fort Worth Oct. 30, 2003, no pet.) (mem. op.) (not designated for publication).

In October 2005, the trial court held a hearing on Bailey’s motion for out-of-time appeal.
(footnote: 3)  Thereafter, the trial court made findings of fact and conclusions of law and granted Bailey an out-of-time appeal.  This appeal followed.

III.  The State Did Not Commit A 
Brady
 Violation

In his first point, Bailey argues that the State failed to promptly inform him of exculpatory evidence it possessed.  Specifically, Bailey argues that by disclosing exculpatory information on the eve of trial, the State committed a 
Brady
 error. 

A 
Brady
 violation occurs when the State suppresses, willfully or inadvertently, evidence favorable to the appellant.  
Harm v. State
, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006).  The State’s duty to reveal 
Brady
 material to the defense attaches when the information comes into the State’s possession, whether or not the defense requested the information.  
Id. 
at 407.  However, the State is not required to seek out exculpatory evidence independently on appellant’s behalf or furnish appellant with exculpatory or mitigating evidence that is fully accessible to appellant from other sources.  
Id.
  Further, no 
Brady
 violation occurs absent suppression of favorable evidence by the State.  
Id.
 at 406.

Here, prior to voir dire, the State went on the record with its 
Brady
 material:

THE COURT:  Okay.  So we agree on the Motion in Limine.  Was there any motion on behalf of the State or the defense that we haven’t considered here that we need to go over today?

[THE STATE]:  None from the State.

[DEFENSE COUNSEL]:  None from the Defense.

[THE STATE]:  I would like to put one thing on the record, Judge.

THE COURT:  Yes.

[THE STATE]:  In the course of the State’s investigation[,] we came across two things that might possibly be considered Brady, and we disclosed those to the defense as soon as we were able to.  One of them was last week we interviewed a potential witness, Alisha Clark.  And in the course of speaking with her, she stated to us that she asked the victim, [C.G.] if – it either came out if they had been messing around or if they had had sex – if she had had sex, if she had had sex or was messing around with the Defendant, and [C.G.] said “No.”  And that was disclosed to the defense.

Additionally, at one time [C.G.] was in counseling in Arlington, and when asked if she had been messing around with the defendant or they had sex, she said no to that counselor.  And those two pieces of evidence were disclosed to the defense last week.

THE COURT:  Okay.  Well, looking in the file I see a Motion for Discovery, and I assume that’s all been complied with; is that correct?

[DEFENSE COUNSEL]:  Yes, Your Honor.

THE COURT:  Okay.  So there are no motions from the State or Defense that need to be taken up before the jury gets here?

[DEFENSE COUNSEL]:  Not at this time.  

Based on the above events, it is clear that no 
Brady 
violation occurred.  The State disclosed the exculpatory evidence as soon as it came into its possession.  Because the State did not suppress this exculpatory evidence, no 
Brady 
violation occurred.  
See Harm
, 183 S.W.3d at 406.  Although Bailey argues generally that his counsel could not “make use of the information in the trial of his case,” he fails to explain why he did not call the witnesses himself after the State did not call them during the guilt-innocence phase or move for a continuance, if necessary, to interview and subpoena these witnesses.  Bailey’s failure to utilize the exculpatory evidence during the guilt-innocence phase does not equate to a 
Brady 
violation by the State.  We overrule Bailey’s first point.

IV.  The State Did Not Interfere With Bailey’s Right To 

Interview A Material Witness

In his fifth point, Bailey argues that the State improperly interfered with his right to interview a material witness, Alisha Clark, who had provided information to the State exculpating him.  Bailey relies on the following testimony that his counsel elicited during the punishment phase of trial from Alisha Clark:
(footnote: 4)
 [DEFENSE COUNSEL:] Last Friday I came up and talked to you, didn’t I? 

A.  Yes, you did.

Q.  And what did I ask you to do?

A.  You were going to question me, and then you said you were tired and asked me to call you. 

Q.  And I gave you my cell number and I gave you my card and asked you to call me the next day, correct?

A.  You didn’t say what day.  You just said, “Call me.”

Q.  I asked you to call me on Saturday, the next day?

A.  I just remember you saying call me.

Q.  Are you denying that?

A.  I heard you say “call me.”  You didn’t say “next day.”

Q.  Okay.  Why didn’t you call?

A.  I didn’t really want to talk to you about it.  I mean –

Q.  You scared?

A.  No, I’m not scared.  Nervous.

Q.  Did anyone tell you not to call me?

A.  No.

Q.  Did anyone tell you that you didn’t have to call me if you didn’t want to?

A.  I asked if I would get in trouble if I didn’t call you, and they said I wouldn’t get in trouble.

. . . .

Q.  Who told you that?

A.  (Pointing)

Q. [The attorney for the State]?

A.  Yes.  

A witness in a criminal case has the right to refuse to be interviewed.  
United States v. Fischel
, 686 F.2d 1082, 1092 (5th Cir. 1982); 
see also Dedesma v. State
, 806 S.W.2d 928, 932 (Tex. App.—Corpus Christi 1991, pet. ref’d) (stating that absent the trial court’s approval, victims are not required to speak with a defendant or his counsel).  “No right of a defendant is violated when a potential witness freely chooses not to talk.” 
United States v. Pinto
, 755 F.2d 150, 152 (10th Cir. 1985).  It is not improper for the prosecution to merely inform the witness that he may decline the interview.  
See United States v. Black
, 767 F.2d 1334, 1338 (9th Cir.), 
cert. denied
, 474 U.S. 1022 (1985); 
Pinto
, 755 F.2d at 152;
 United States v. White
, 454 F.2d 435, 438-39 (7th Cir. 1971), 
cert. denied
, 406 U.S. 962 (1972).  However, the prosecution may not interfere with the free choice of a witness to speak with the defense absent justification “by the clearest and most compelling considerations.”  
Pinto
, 755 F.2d at 152
.
  Reversal on this ground requires a clear showing that the government instructed the witness not to cooperate with the defendant.  
White
, 454 F.2d at 438-39.

Here, Bailey’s broad statements—that Clark had developed a connection with the State based on the State’s investigation into the case and that Clark’s connection with the State “led [her] to consult with [the State] prior to submitting to a request from Appellant’s counsel,” which in turn “led [her] to refuse to contact Appellant’s counsel”—are not reflected in the record.  There is no evidence that the State instructed Clark not to speak to defense counsel.  The fact that the State informed her of her right not to submit to an interview was not improper.  
See Black
, 767 F.2d at 1338 (holding that prosecutor’s letter—advising witnesses of their right to decline defendant’s request for interview—constituted a correct statement of law and was not improper); 
White
, 454 F.2d at 439 (holding that witness is free to decide whether to grant or refuse an interview and that it is not improper for government to inform witness of that right); 
see also Florio v. State
, 532 S.W.2d 614, 616-17 (Tex. Crim. App. 1976) (holding that appellant was not denied fair trial even though State instructed witness not to talk to defense counsel because appellant did not request witness to be present at discovery hearing).

Consequently, we hold that the State did not improperly interfere with Bailey’s right to interview Clark when the State informed her of her right not to talk to the defense.  
See Black
, 767 F.2d at 1338.  We overrule Bailey’s fifth point.

V.  Trial Court Did Not Commit Error

A. State’s Expert’s Testimony Properly Admitted

In his second point, Bailey contends that the trial court erred by allowing the introduction of improper scientific testimony.  Specifically, Bailey complains that Ron Mercante, a licensed social worker, was not qualified in this case to offer testimony regarding Post-Traumatic Stress Disorder (PTSD) or a technique called Eye Movement Desensitization and Reprocessing (EMDR). 

A trial court’s decision to admit or exclude evidence is afforded a great deal of discretion; thus, we review a trial court’s ruling on admissibility or exclusion of evidence under an abuse of discretion standard.  
See Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); 
Hall v. State
, 13 S.W.3d 115, 120 (Tex. App.—Fort Worth 2000) (applying abuse of discretion standard to chain of custody issue), 
pet. dism'd, improvidently granted
, 46 S.W.3d 264 (Tex. Crim. App. 2001).  We will uphold a trial court’s evidentiary ruling if it is reasonably supported by the record and is correct under any theory of applicable law.  
Martin v. State
, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); 
see Cantu v. State
, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992), 
cert. denied
, 509 U.S. 926 (1993).

Our review of the record reveals that the trial court held a hearing outside the jury’s presence to determine the admissibility of Mercante’s testimony.  During the hearing, Mercante testified regarding his education—both undergraduate and graduate—and his training to become a licensed clinical social worker and a psychotherapist.  Mercante stated that he has been to “a lot of workshops” and has gone to hospitals to hear speakers in order to keep up his certifications on PTSD and EMDR.  Mercante also testified that he worked at Elgin State Mental Hospital in admissions, intermediate care, and extended care; that he worked at Saint Ann’s Hospital for five years as an emergency room social worker during which time he counseled rape victims; that he worked at Glendale Community Hospital in a stress center and the adolescent psychiatric center; and that he worked at Mercy Hospital as a psychiatric social worker.  While he worked at Mercy Hospital, he often assisted doctors with the diagnosis and treatment of individuals with PTSD.  Mercante also described EMDR, explaining that it is not a form of hypnotism but rather a memory technique that is used and recognized in the fields of social work, psychiatry, and psychology.   

Afterwards, Bailey cross-examined Mercante extensively regarding EMDR and called Roy E. Cage, a certified hypnotherapist, to testify regarding hypnosis and whether the rapid eye movement creates hypnosis.  Cage testified that he could not say that EMDR is hypnosis.  

Thereafter, the trial court heard argument from both sides regarding the admissibility of Mercante’s testimony and ruled that Mercante’s testimony was admissible.  The trial court also granted Bailey a running objection to Mercante’s testimony. 

Based on the testimony before it, the trial court could have found that Mercante was qualified to testify in this case regarding PTSD and EMDR based on his knowledge, skill, experience, training, 
or
 education.  
See
 
Tex. R. Evid.
 702 (stating that “a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion”).  Mercante demonstrated that he was familiar with the PTSD diagnosis and the EMDR technique and that he had worked with victims of extended sexual abuse.  Moreover, the evidence demonstrated that PTSD is an accepted diagnosis in the medical community and that EMDR treatment is used and recognized in the fields of social work, psychiatry, and psychology.  Therefore, we hold that the trial court did not abuse its discretion by finding that Mercante was qualified to testify in this case, by finding that his testimony was reliable, and by allowing Mercante to offer testimony regarding the PTSD diagnosis and the treatment with the EMDR technique.  
See Martin
, 173 S.W.3d at 467; 
Guzman
, 955 S.W.2d at 89. 
 We overrule Bailey’s second point.

B. Hearsay

In his third point, Bailey argues that the trial court erred by admitting hearsay statements of C.G.  Specifically, Bailey contends that Mercante and other witnesses testified to statements made by C.G. to them regarding the allegations against Bailey and that these statements were hearsay and did not fall into the child outcry exception.  The State responds that C.G.’s statements to Mercante were properly admitted as statements made for the purposes of medical diagnosis or treatment and that Bailey waived error, if any, with regard to C.G.’s statements to other witnesses.  

As mentioned above, we 
review a trial court’s ruling on admissibility or exclusion of evidence under an abuse of discretion standard and will uphold a trial court’s evidentiary ruling if it is reasonably supported by the record and is correct under any theory of applicable law
.  
See Guzman
, 955 S.W.2d at 89; 
Hall
, 13 S.W.3d at 120; 
see also Martin
, 173 S.W.3d at 467.  Texas Rule of Evidence 803(4) provides that “[s]tatements made for purposes of medical diagnosis
 or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment” are not excluded by the hearsay rule even though the declarant is available as a witness.  
Tex. R. Evid.
 803(4).

A review of the record demonstrates that C.G. testified that as part of her counseling, she told Mercante what Bailey did to her.  C.G. stated that it was her understanding that she needed to tell Mercante what happened in order for her to get treatment.  Mercante testified outside the jury’s presence that he makes patients aware of the importance of telling the truth because he is seeing them for the purpose of medical diagnosis and treatment.  

Bailey relies on his argument under his second point that Mercante’s testimony does not establish the necessary requisites to allow hearsay under the medical treatment or diagnosis exception.  However, we held above that the trial court did not err by finding that Mercante was qualified to testify on PTSD because he met the qualifications to testify as an expert on this topic.  Consequently, we hold that Mercante’s testimony retelling C.G.’s interactions with Bailey, which were told to him for the purpose of C.G.’s medical diagnosis or treatment, was not excluded by the hearsay rule and was therefore admissible.
(footnote: 5)  
See 
Tex. R. Evid.
 803(4);
 
Horner v. State
, 129 S.W.3d 210, 219-20 (Tex. App.—Corpus Christi 2004, pet. ref’d) (holding that medical social worker’s testimony related to victim’s statements was properly admitted pursuant to rule 803(4)), 
cert. denied
, 546 US 1116(2005); 
Puderbaugh v. State
, 31 S.W.3d 683, 685 (Tex. App.—Beaumont 2000, pet. ref’d) (holding that trial court did not err by admitting social worker’s testimony under rule 803(4)).

Bailey also argues in his third point that “[o]ther witnesses also testified as to statements made by [C.G.] regarding her allegations against [Bailey], also over objection.”  However, Bailey’s argument does not point this court to the statements and objections he is referring to; he cites to no specific portion of the record.  We therefore cannot determine his specific complaint; we hold that this particular sub complaint has been forfeited.  
See 
Tex. R. App. P.
 38.1(h) (stating that “brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record”). We overrule Bailey’s third point.

C. No Double Jeopardy Violation

In his fourth point, Bailey contends that the trial court’s charge erroneously allowed the jury to convict him on both a greater and a lesser included offense arising out of the same conduct, aggravated sexual assault of a child by penetration, alleged to have occurred on December 15, 1999, and indecency with a child by contacting the genitals of a child on December 15, 1999.  Bailey contends that the double jeopardy prohibition against two convictions was violated here because the conduct that constituted indecency with a child by sexual contact—that is, touching the genitals of the victim—was necessarily subsumed by the conduct that constituted aggravated sexual assault of a child under fourteen years of age by penile penetration of the victim.

The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense.  U.S. C
ONST
. amend. V.  Generally, this clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.  
Brown v. Ohio
, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); 
Ex parte Herron
, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990) (op. on reh’g).

To determine whether both offenses are the same, we must examine the elements of the applicable statutes to determine whether each statute “requires proof of an additional fact which the other does not.”  
Blockburger v. United States
, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932); 
see United States v. Dixon
, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856 (1993); 
Parrish v. State
, 869 S.W.2d 352, 353-55 (Tex. Crim. App. 1994).  

At the outset, we note that at trial, Bailey did not make a double jeopardy objection per se.  He argued that indecency fondling is a lesser included offense of sexual assault; thus, he argued that the State could not get a conviction for both.  Normally, a failure to specifically raise a double jeopardy complaint at trial would mean that no error is preserved for our review.  
See Beltran v. State
, 30 S.W.3d 532, 533 n.1 (Tex. App.—San Antonio 2000, no pet.).  However, “[i]n cases where the trial court either knew or should have known of the jeopardy problem, no purpose is served in enforcing the state procedural rule[,] and the defendant may assert this interest after trial.”  
Id.
  As in 
Beltran
, here the complained-of jeopardy problem consists of two convictions, before the same judge and jury, arising out of conduct that occurred during the same criminal episode.  
See
 
id.
  The trial court here should have known of this potential complication, especially in light of the objection Bailey did make; consequently,  Bailey may argue his double jeopardy claim in this proceeding.  
See id.

An offense is included within another if “it is established by proof of the same or less than all the facts required to establish the commission of the offense charged.”  
Tex. Code Crim. Proc. Ann.
 art. 37.09 (Vernon 2006).  Courts have held indecency with a child to be a lesser included offense of aggravated sexual assault, but only under certain circumstances.  
See, e.g., Ochoa v. State
, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998); 
Cunningham v. State
, 726 S.W.2d 151, 153 (Tex. Crim. App. 1987); 
Beltran
, 30 S.W.3d at 534.

Of these cases, Bailey relies on 
Ochoa.
  In 
Ochoa
, the evidence at trial showed that only one offense had been committed. 
 Ochoa
, 982 S.W.2d at 908.  The State had introduced evidence of only one sexual offense committed by appellant on the day in question.  
Id.
 at 907.  The child did not testify that appellant touched her more than once.  
Id.
  The 
Ochoa
 court specifically stated that a charge on the lesser included offense of indecency with a child, in addition to aggravated sexual assault, would have been proper, however, “if the evidence at trial raised the issue that appellant intended to arouse or gratify his sexual desire while in the course of committing the alleged penetration.”  
Id
. at 908.  The court said that our focus as an appellate court is “whether the evidence in this case justified the trial court in submitting instructions that would permit the jury to convict and sentence appellant 
both
 for committing aggravated sexual assault 
and
 for committing indecency with a child” on a particular date.  
Id.
 (emphasis added).

Here, C.G. testified that Bailey inserted his finger into her vagina before he inserted his penis into her vagina.  C.G. specifically testified, “He started the way that he always started, with my legs, my thighs.  He would 
always
 insert his finger into my vagina.” [Emphasis added.]

Thus, in this case, evidence exists that Bailey committed more than one sexual offense on the day in question.  Although the two acts were committed in close temporal proximity, Bailey’s insertion of his finger into C.G.’s female sexual organ was a separate and distinct act from his penetration of her female sexual organ with his penis.  
See Hutchins v. State
, 992 S.W.2d 629, 633 (Tex. App.—Austin 1999, pet. ref’d, untimely filed).  Consequently, the record supports the submission of both aggravated sexual assault and indecency with a child.  
Beltran
, 30 S.W.3d at 534; 
see also Hutchins
, 992 S.W.2d at 633 (holding that because
 appellant had not shown that his conviction for indecency with a child by contact was based on the same conduct underlying his conviction for aggravated sexual assault of a child, his contention that these convictions constituted multiple punishments for the same offense was without merit).  We overrule Bailey’s fourth point.

D. No Proof of Juror Misconduct

In his sixth point, Bailey contends that the trial court erred by entering a judgment based on an improper jury verdict.  The State responds that Bailey has not provided this court with a sufficient record to substantiate this point, that Bailey has not properly briefed this point and presents nothing for review, and that, in the alternative, the trial court did not enter judgment based on an improper jury verdict.  

At issue is the following in camera discussion, which occurred while the jury was deliberating during the punishment phase, between the trial court and a juror:

THE COURT: This is Monday July 7th.  You’re Mr. - -

JUROR: [] Stein.

THE COURT: You have something you want to talk about?

THE JUROR: I don’t know if it’s anything.  I’ve never been on a jury, so I have nothing to go on.  Maybe it’s just me, maybe I’m being bothered.  During the deciding whether the defendant was guilty or not guilty there were - - it was eight to four guilty, and the four that said, well, we don’t think he’s really guilty were willing to, in quote, negotiate in the sense on the sexual assault count, no, we won’t go for that, but we’ll go for the lesser, quote, unquote, indecency/fondling.  Now I’m not of those four.  I’m of the other side.

THE COURT: Okay.

THE JUROR: But they were willing to go ahead and say we’ll vote he’s guilty of that.  At the time I didn’t think about it, didn’t know.  I thought it was normal.  Then we’re coming back to the penalty phase, and it becomes obvious that they think the man is innocent.  I asked why - - if you thought he was innocent, why did you say we’ll go along, we’ll negotiate.  And they said, well, to get out of here.  Now, that bothers me.  I said, I have a life, too.  I want to go back to my life, but whatever it takes, we need to do.  So I don’t know.  Now we’re in the penalty part, and, you know, it’s sort of like the same folks are, well, no, we don’t think he’s guilty, we’ll be doing - - maybe that’s normal jury stuff.

THE COURT: I think my instructions are going to be to go in and work with these people.  It may be this may be discussed later.  You just go back inside and work with the panel you’re with.  Okay?  It may be I’ll give you some further instructions in a little bit.

THE JUROR: I just want to make sure it’s done right.

THE COURT: I appreciate you bringing this to our attention, and you’ve done what you’re supposed to do.  Okay?

THE JUROR: Okay.

THE COURT: All right.  Thank you.  Y’all have a good day.

(Jury continues deliberating at 9:30 a.m.) 

An inquiry into the validity of a jury verdict is governed by Texas Rule of Evidence 606(b) and Texas Rule of Appellate Procedure 21.3.  
See, e.g., Hines v. State
, 3 S.W.3d 618, 620-23 (Tex. App.—Texarkana 1999, pet. ref’d) (holding that rules 606(b) and 21.3 work together, without conflict, to define jury misconduct and provide how it may be proved).  Texas Rule of Evidence 606(b) provides as follows:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury’s deliberations, or to the effect of anything on any juror’s mind or emotions or mental processes, as influencing any juror’s assent to or dissent from the verdict or indictment.  Nor may a juror’s affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes.  However, a juror may testify:  (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.

Tex. R. Evid.
 606(b).  Texas Rule of Appellate Procedure 21.3 provides that a defendant must be granted a new trial “when the verdict has been decided by lot or in any manner other than a fair expression of the jurors’ opinion” or “when the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial.”  
Tex. R. App. P.
 21.3(c), (g).

In this case, Bailey’s trial counsel filed an untimely motion for new trial, which did not raise juror misconduct,
(footnote: 6) and the trial court held a hearing on the untimely motion for new trial and denied it.  Because the alleged juror misconduct was not raised in a motion for new trial and because the trial court could not grant a new trial 
sua sponte
, the alleged juror misconduct would normally not be before this court.  
See Dunn v. State
, 176 S.W.3d 880, 885 (Tex. App.—Fort Worth 2005, no pet.); 
see also
 
Tex. R. App. P.
 21.1.  However, to the extent that Bailey’s allegations of juror misconduct are before us through the record of the in camera hearing, we proceed to analyze the alleged misconduct under the only possible applicable provision of 606(b)—whether any outside influence was improperly brought to bear upon any juror.  
See
 
Tex. R. Evid.
 606(b).

In performing an analysis of jury misconduct of the type alleged here, we find 
Dunklin v. State
 instructive.  194 S.W.3d 14, 19-20 (Tex. App.—Tyler 2006, no pet.).  In 
Dunklin
, the appellant’s motion for new trial attached the affidavit of a juror who stated that he and two other jurors did not believe that the appellant was guilty but agreed to the guilty verdict because the other jurors promised to give the appellant probation with no jail time.  
Id.
 at 19.  The State objected to the admission of the juror’s affidavit because the information it contained was a discussion of the jury’s deliberations, which is a type of information that is not admissible under rule 606(b).  
Id.
 at 20.  The trial court sustained the State’s objection.  
Id.
  The court of appeals held that the trial court did not abuse its discretion by denying a new trial on this ground because the appellant presented no admissible evidence to support his allegation of jury misconduct.  
Id.

Here, the dialogue between the trial court and Juror Stein does not reveal that any outside influence was improperly brought to bear upon the four jurors who allegedly supported a not guilty verdict.  Instead, Juror Stein’s discussion of the jury’s deliberations establishes the same type of juror conduct that was at issue in 
Dunklin
, and the trial and appellate courts held that this type of alleged misconduct could not be proved by affidavit.  194 S.W.3d at 20.  Consequently, here Bailey did not and could not have presented evidence in support of his allegation of jury misconduct because the type of conduct at issue is not admissible as evidence of misconduct under Texas Rule of Evidence 606(b).  
Tex. R. Evid.
 606(b).

Because we are bound by the rules of appellate procedure and the rules of evidence and because we have found no contrary authority, we hold that Bailey did not and could not prove that jury misconduct via outside influence occurred, and thus the trial court did not err by entering judgment on the jury’s verdict.  
See Dunklin
, 194 S.W.3d at 20; 
see also State v. Krueger
, 179 S.W.3d 663, 667-70 (Tex. App.—Beaumont 2005, no pet.) (holding that trial court erred by granting new trial based on jury misconduct that he judicially noticed but which appeared only through audible recollections by the judge presiding over the new trial hearing); 
Garza v. State
, 82 S.W.3d 791, 794 (Tex. App.—Corpus Christi 2002, no pet.) (holding that trial court was within its discretion to deny motion for new trial because juror’s comment on appellant’s use of his left hand did not come from a nonjuror and was thus not an outside influence).  We overrule Bailey’s sixth point.

VI.  Trial Counsel Provided Effective Assistance Of Counsel

In his seventh point, Bailey contends that his trial counsel provided ineffective assistance.  The actions and omissions that Bailey complains of include his trial counsel’s (1) failure to properly address the untimely 
Brady
 disclosure of exculpatory evidence by the State; (2) failure to properly prepare for the testimony of the State’s expert witness, Ron Mercante, and the presentation of an expert in response who was unqualified to rebut Mercante’s claims; (3) failure to properly and timely establish claims that the EMDR therapy conducted on C.G. amounted to hypnosis, which rendered her statements unreliable; (4) failure to properly investigate witnesses who could provide exculpatory testimony and failure to compel their appearance during the guilt-innocence phase of trial; (5) failure to establish a record regarding the State’s interactions with Alisha Clark; (6) waiver of Bailey’s right to provide an opening statement to the jury; (7) failure to timely address allegations of juror misconduct raised during trial; and (8) failure to timely file a motion for new trial allowing the further development of juror misconduct.

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that
 his
 counsel’s representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel’s deficiency, the result of the trial would have been different.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Salinas v. State
, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); 
Mallett v. State
, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001); 
Thompson
 
v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); 
Hernandez v. State
, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel’s assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
See Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  Review of counsel’s representation is highly deferential, and the reviewing court indulges a strong presumption that counsel’s conduct fell within a wide range of reasonable representation.  
Salinas
, 163 S.W.3d at 740; 
Mallett
, 65 S.W.3d at 63.  A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim.  
Thompson
, 9 S.W.3d at 813-14.  “In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel’s actions.”  
Salinas
, 163 S.W.3d at 740 (quoting 
Mallett
, 65 S.W.3d at 63).  To overcome the presumption of reasonable professional assistance, “any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.”  
Id.
, (quoting 
Thompson
, 9 S.W.3d at 813).

The second prong of 
Strickland
 requires a showing that counsel’s errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable.  
Strickland, 
466 U.S. at 687, 104 S. Ct. at 2064.  In other words, appellant must show there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.  
Id.
 at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  
Id.
  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  
Id.
 at 697, 104 S. Ct. at 2070.

With regard to Bailey’s first allegation of ineffective assistance of counsel related to the timing of the State’s disclosure of 
Brady
 material, we held above that the State disclosed the exculpatory evidence as soon as it came into its possession, and therefore no 
Brady
 violation occurred.  Consequently, Bailey’s first allegation of ineffective assistance cannot stand.

With regard to Bailey’s second, third, fourth, and fifth claims of ineffective assistance of counsel, the record does not reflect that trial counsel rendered ineffective assistance.  For instance, the record demonstrates that Bailey’s trial counsel thoroughly cross-examined Mercante, dispelling Bailey’s argument that his trial counsel failed to properly prepare for Mercante’s testimony.  With regard to Bailey’s allegation that his trial counsel failed to properly establish that EMDR therapy amounted to hypnosis, his own expert could not testify to this, and there is no evidence in the record that this could be established; consequently, Bailey’s trial counsel cannot be ineffective based on this unsubstantiated allegation.  Additionally, the record is silent with regard to Bailey’s trial counsel’s decision to not call Cage to testify to rebut Mercante’s testimony, his decision to not file a continuance to investigate Clark’s exculpatory testimony, his decision to not call Clark to testify during the guilt-innocence phase, and his decision to not develop a record regarding the State’s interactions with Clark.  Moreover, Bailey’s trial counsel’s decision to waive opening statement could have been a trial tactic. Because these allegations of ineffectiveness are not firmly founded in the record, Bailey has not rebutted the presumption that his trial counsel’s decisions were reasonable.  
See Salinas
, 163 S.W.3d at 740 (quoting 
Thompson
, 9 S.W.3d at 813); 
see also Valdes-Fuerte v. State
, 892 S.W.2d 103, 112 (Tex. App.—San Antonio 1994, no pet.) (stating that when there is nothing in the record to reflect trial counsel’s decisions for his inaction, and plausible explanations exist, appellate court should presume trial counsel made all significant decisions in the exercise of professional judgment).

With regard to Bailey’s allegation that his trial counsel was ineffective for failing to timely file a motion for new trial—even if the failure to timely file a motion for new trial constitutes ineffective assistance of counsel, in this case the record does not establish 
a reasonable probability that, but for counsel’s alleged unprofessional error, the result of the proceeding would have been different. 
 
See Strickland
, 466 U.S. at 694, 104 S. Ct. at 2068.  Here, even though Bailey’s motion for new trial was untimely, the trial court heard it and denied it.  And as discussed above, the alleged jury misconduct alleged here could not be established via affidavits and a motion for new trial in any event.  
See
 
Tex. R. Evid.
 606(b).  Because the complaints raised in Bailey’s untimely motion for new trial were actually heard by the trial court and because the jury misconduct issue could not have been raised in a motion for new trial, 
no reasonable probability exists that, but for counsel’s failure to timely file a motion for new trial and to raise the alleged jury misconduct in that motion for new trial, the result of the proceeding would have been different. 
 
See Strickland
, 466 U.S. at 694, 104 S. Ct. at 2068.

Because Bailey’s allegations of ineffectiveness are not firmly founded in the record, we hold that his trial counsel did not provide ineffective assistance.  We overrule Bailey’s seventh point.

VII.  Conclusion

Having overruled Bailey’s seven points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL A: LIVINGSTON, HOLMAN, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: January 11, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Brady v. Maryland
, 373 U.S. 83, 83 S. Ct. 1194 (1963).

3:
Bailey’s motion is not in the record before us, but we have the transcript from the hearing.

4:
Although neither the State nor Bailey called Clark as a witness during guilt-innocence, the State called her to testify at punishment. 

5:
The State concedes that because C.G. was thirteen years old at the time Bailey first assaulted her, the child outcry exception is not applicable.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 38.072 (Vernon 2006).  However, having held that the testimony C.G. related to Mercante was properly admitted under Texas Rule of Evidence 803(4), we need not address this subpoint further.  
See
 
Tex. R. App. P.
 47.1.

6:
The record does not reveal when Bailey learned of the in camera hearing.