COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-394-CR

 

 

CHARLES CLIFFORD BAILEY                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

 

I.  Introduction








Appellant Charles Clifford Bailey appeals his
conviction for indecency with a child.  A
jury found Bailey guilty, assessed his punishment at three years=
confinement, and recommended that the sentence be suspended and that Bailey be
placed on community supervision.  The
trial court sentenced Bailey to three years=
confinement, probated for six years.  In
seven points, Bailey contends that the State committed a Brady[2]
violation and interfered with his right to interview material witnesses who
would provide exculpatory testimony; that the trial court erred by allowing
improper scientific testimony and inadmissible hearsay statements, by
erroneously charging the jury, and by entering a judgment based on an improper
jury verdict; and that trial counsel provided ineffective assistance of
counsel.  We will affirm.

II.  Factual and Procedural Background

In 1999, the grand jury indicted Bailey on two
counts of aggravated sexual assault of a child younger than fourteen years of
age by penile/vaginal penetration and by digital/vaginal penetration, one count
of sexual assault of a child younger than seventeen years of age by
penile/vaginal penetration, and one count of indecency with a child by touching
her genitals.  Prior to voir dire, the
State abandoned a second count of indecency with a child. 








At trial in 2003, the victim, C.G., testified
that Bailey is her stepfather=s mother=s
husband and that she spent time at Bailey=s house
during the summer of 1996.  C.G. testified
that the first sexual episode with Bailey occurred in the master bedroom during
the summer of 1996; C.G. was sitting on the edge of the bed, facing the
computer, and Bailey was sitting in the swivel chair.  C.G. said that Bailey turned the chair around,
reached down, grabbed her feet, and began rubbing them.  C.G. stated that Bailey proceeded to rub her
knees and thighs before putting his fingers inside the leg of her shorts and
into her panties.  C.G. testified that
Bailey put his fingers inside her vagina for a couple of minutes and then took
his fingers out. 

A couple of weeks later, still during the summer
of 1996, Bailey started rubbing C.G.=s feet,
legs, knees, and thighs while she was on the bed.  C.G. said that Bailey began pulling down her
shorts and then her panties; he pulled down his shorts and then took her
panties off.  C.G. testified that Bailey
rubbed her vagina with his fingers and tried to insert his penis into her
vagina.  C.G. stated that Bailey was at
first unable to insert his penis, but then he made it erect, pulled her hips to
the edge of the bed, and inserted his penis into her vagina.  C.G. testified that Bailey kept his penis in
her vagina for about five minutes, moved up and down, pulled his penis out, and
ejaculated into a white towel on the side of the bed. 

One day while Bailey=s wife
was at work, Bailey and C.G. played Nintendo, and Bailey asked C.G. to sit on
his lap.  C.G. said that Bailey put his
hands over her breasts and rubbed them and put his tongue in her mouth.








The next time that something sexual happened,
C.G. and Bailey were in the master bedroom. 
C.G. said that she was on the bed, and Bailey was in the swivel chair at
the computer.  C.G. testified that Bailey
turned around and put his legs around hers and proceeded to rub her feet, legs,
knees, and thighs.  C.G. stated that she
was still thirteen years old when this event occurred. 

C.G. also testified regarding a time when she had
sex with Bailey when she was fourteen. 
She said that they were in the large bedroom upstairs, and they had sex
in her bed.  She said that he put his
finger in her vagina first; then, he told her to get on top of him, and he put
his penis into her vagina and moved her hips. 


After hearing the above testimony, as well as the
testimony from other witnesses, the jury found Bailey guilty of indecency with
a child C sexual
contact, assessed his punishment at three years=
confinement, and recommended that the sentence be suspended and that Bailey be
placed on community supervision.  The
trial court sentenced Bailey to three years=
confinement, probated for six years. 
Bailey attempted to appeal his conviction but filed his notice of appeal
one day late, resulting in the dismissal of his appeal.  See Bailey v. State, No.
02-03-00374-CR, 2003 WL 22456990, at *1 (Tex. App.CFort
Worth Oct. 30, 2003, no pet.) (mem. op.) (not designated for publication).








In October 2005, the trial court held a hearing
on Bailey=s motion for out-of-time appeal.[3]  Thereafter, the trial court made findings of
fact and conclusions of law and granted Bailey an out-of-time appeal.  This appeal followed.

III.  The State Did Not Commit A Brady
Violation

 

In his first point, Bailey argues that the State
failed to promptly inform him of exculpatory evidence it possessed.  Specifically, Bailey argues that by
disclosing exculpatory information on the eve of trial, the State committed a Brady
error. 








A Brady violation occurs when the State
suppresses, willfully or inadvertently, evidence favorable to the
appellant.  Harm v. State, 183
S.W.3d 403, 406 (Tex. Crim. App. 2006). 
The State=s duty to reveal Brady
material to the defense attaches when the information comes into the State=s
possession, whether or not the defense requested the information.  Id. at 407.  However, the State is not required to seek
out exculpatory evidence independently on appellant=s behalf
or furnish appellant with exculpatory or mitigating evidence that is fully
accessible to appellant from other sources. 
Id.  Further, no Brady
violation occurs absent suppression of favorable evidence by the State.  Id. at 406.

Here, prior to voir dire, the State went on the
record with its Brady material:

THE COURT:  Okay. 
So we agree on the Motion in Limine. 
Was there any motion on behalf of the State or the defense that we haven=t considered here that we
need to go over today?

 

[THE STATE]:  None from the State.

 

[DEFENSE COUNSEL]:  None from the Defense.

 

[THE STATE]:  I would like to put one thing on the record,
Judge.

 

THE COURT:  Yes.

 

[THE STATE]:  In the course of the State=s investigation[,] we
came across two things that might possibly be considered Brady, and we
disclosed those to the defense as soon as we were able to.  One of them was last week we interviewed a
potential witness, Alisha Clark.  And in
the course of speaking with her, she stated to us that she asked the victim,
[C.G.] if B it either came out if
they had been messing around or if they had had sex B if she had had sex, if
she had had sex or was messing around with the Defendant, and [C.G.] said ANo.@  And that was disclosed to the defense.

 

Additionally, at one time [C.G.] was in counseling in Arlington, and
when asked if she had been messing around with the defendant or they had sex,
she said no to that counselor.  And those
two pieces of evidence were disclosed to the defense last week.

 

THE COURT:  Okay. 
Well, looking in the file I see a Motion for Discovery, and I assume
that=s all been complied with;
is that correct?








[DEFENSE COUNSEL]:  Yes, Your Honor.

 

THE COURT:  Okay. 
So there are no motions from the State or Defense that need to be taken
up before the jury gets here?

 

[DEFENSE COUNSEL]:  Not at this time.  

 

Based on the above events, it is clear that no Brady
violation occurred.  The State
disclosed the exculpatory evidence as soon as it came into its possession.  Because the State did not suppress this
exculpatory evidence, no Brady violation occurred.  See Harm, 183 S.W.3d at 406.  Although Bailey argues generally that his
counsel could not Amake use of the information in
the trial of his case,@ he fails to explain why he did
not call the witnesses himself after the State did not call them during the
guilt-innocence phase or move for a continuance, if necessary, to interview and
subpoena these witnesses.  Bailey=s
failure to utilize the exculpatory evidence during the guilt-innocence phase
does not equate to a Brady violation by the State.  We overrule Bailey=s first
point.

IV.  The State Did Not Interfere With Bailey=s
Right To 

Interview
A Material Witness

 








In his fifth point, Bailey argues that the State
improperly interfered with his right to interview a material witness, Alisha
Clark, who had provided information to the State exculpating him.  Bailey relies on the following testimony that
his counsel elicited during the punishment phase of trial from Alisha Clark:[4]

[DEFENSE COUNSEL:] Last
Friday I came up and talked to you, didn=t I? 

 

A.  Yes,
you did.

Q.  And
what did I ask you to do?

A.  You were going to question me, and then you
said you were tired and asked me to call you. 

 

Q.  And I gave you my cell number and I gave you
my card and asked you to call me the next day, correct?

 

A.  You
didn=t say
what day.  You just said, ACall me.@

Q.  I asked
you to call me on Saturday, the next day?

A.  I just
remember you saying call me.

Q.  Are you
denying that?

A.  I heard
you say Acall me.@  You didn=t say Anext
day.@

Q. 
Okay.  Why didn=t you
call?

A.  I didn=t really
want to talk to you about it.  I mean B

Q.  You
scared?

A.  No, I=m not
scared.  Nervous.








Q.  Did
anyone tell you not to call me?

A.  No.

Q.  Did anyone tell you that you didn=t have to call me if you
didn=t want to?

 

A.  I asked if I would get in trouble if I didn=t call you, and they said
I wouldn=t get in trouble.

 

. . . .

Q.  Who
told you that?

A. 
(Pointing)

Q. [The attorney for the State]?

A. 
Yes.  








A witness in a criminal case has the right to
refuse to be interviewed.  United
States v. Fischel, 686 F.2d 1082, 1092 (5th Cir. 1982); see also Dedesma
v. State, 806 S.W.2d 928, 932 (Tex. App.CCorpus
Christi 1991, pet. ref=d) (stating that absent the
trial court=s approval, victims are not
required to speak with a defendant or his counsel).  ANo right
of a defendant is violated when a potential witness freely chooses not to talk.@ United
States v. Pinto, 755 F.2d 150, 152 (10th Cir. 1985).  It is not improper for the prosecution to
merely inform the witness that he may decline the interview.  See United States v. Black, 767 F.2d
1334, 1338 (9th Cir.), cert. denied, 474 U.S. 1022 (1985); Pinto,
755 F.2d at 152; United States v. White, 454 F.2d 435, 438-39 (7th Cir.
1971), cert. denied, 406 U.S. 962 (1972).  However, the prosecution may not interfere
with the free choice of a witness to speak with the defense absent
justification Aby the clearest and most
compelling considerations.@  Pinto, 755 F.2d at 152.  Reversal on this ground requires a clear
showing that the government instructed the witness not to cooperate with the
defendant.  White, 454 F.2d at
438-39.








Here, Bailey=s broad
statementsCthat Clark had developed a
connection with the State based on the State=s investigation
into the case and that Clark=s
connection with the State Aled
[her] to consult with [the State] prior to submitting to a request from
Appellant=s counsel,@ which
in turn Aled
[her] to refuse to contact Appellant=s
counsel@Care not
reflected in the record.  There is no
evidence that the State instructed Clark not to speak to defense counsel.  The fact that the State informed her of her
right not to submit to an interview was not improper.  See Black, 767 F.2d at 1338 (holding
that prosecutor=s letterCadvising
witnesses of their right to decline defendant=s
request for interviewCconstituted a correct statement
of law and was not improper); White, 454 F.2d at 439 (holding that
witness is free to decide whether to grant or refuse an interview and that it
is not improper for government to inform witness of that right); see also
Florio v. State, 532 S.W.2d 614, 616-17 (Tex. Crim. App. 1976) (holding
that appellant was not denied fair trial even though State instructed witness
not to talk to defense counsel because appellant did not request witness to be
present at discovery hearing).

Consequently, we hold that the State did not
improperly interfere with Bailey=s right
to interview Clark when the State informed her of her right not to talk to the
defense.  See Black, 767 F.2d at
1338.  We overrule Bailey=s fifth
point.

V.  Trial Court Did Not Commit Error

A.     State=s Expert=s
Testimony Properly Admitted

In his second point, Bailey contends that the
trial court erred by allowing the introduction of improper scientific
testimony.  Specifically, Bailey
complains that Ron Mercante, a licensed social worker, was not qualified in
this case to offer testimony regarding Post-Traumatic Stress Disorder (PTSD) or
a technique called Eye Movement Desensitization and Reprocessing (EMDR). 








A trial court=s decision to
admit or exclude evidence is afforded a great deal of discretion; thus, we
review a trial court=s ruling on admissibility or exclusion of evidence
under an abuse of discretion standard.  See
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Hall v. State,
13 S.W.3d 115, 120 (Tex. App.CFort Worth 2000) (applying abuse of discretion
standard to chain of custody issue), pet. dism'd, improvidently granted,
46 S.W.3d 264 (Tex. Crim. App. 2001).  We
will uphold a trial court=s evidentiary ruling if it is reasonably supported by
the record and is correct under any theory of applicable law.  Martin v. State, 173 S.W.3d 463, 467
(Tex. Crim. App. 2005); see Cantu v. State, 842 S.W.2d 667, 682 (Tex.
Crim. App. 1992), cert. denied, 509 U.S. 926 (1993).








Our review of the record reveals that the trial
court held a hearing outside the jury=s
presence to determine the admissibility of Mercante=s
testimony.  During the hearing, Mercante
testified regarding his educationCboth
undergraduate and graduateCand his
training to become a licensed clinical social worker and a
psychotherapist.  Mercante stated that he
has been to Aa lot of workshops@ and has
gone to hospitals to hear speakers in order to keep up his certifications on
PTSD and EMDR.  Mercante also testified
that he worked at Elgin State Mental Hospital in admissions, intermediate care,
and extended care; that he worked at Saint Ann=s
Hospital for five years as an emergency room social worker during which time he
counseled rape victims; that he worked at Glendale Community Hospital in a
stress center and the adolescent psychiatric center; and that he worked at
Mercy Hospital as a psychiatric social worker. 
While he worked at Mercy Hospital, he often assisted doctors with the
diagnosis and treatment of individuals with PTSD.  Mercante also described EMDR, explaining that
it is not a form of hypnotism but rather a memory technique that is used and
recognized in the fields of social work, psychiatry, and psychology.        

Afterwards, Bailey cross-examined Mercante
extensively regarding EMDR and called Roy E. Cage, a certified hypnotherapist,
to testify regarding hypnosis and whether the rapid eye movement creates
hypnosis.  Cage testified that he could
not say that EMDR is hypnosis.  

Thereafter, the trial court heard argument from
both sides regarding the admissibility of Mercante=s
testimony and ruled that Mercante=s
testimony was admissible.  The trial
court also granted Bailey a running objection to Mercante=s
testimony. 








Based on the testimony before it, the trial court
could have found that Mercante was qualified to testify in this case regarding
PTSD and EMDR based on his knowledge, skill, experience, training, or
education.  See Tex. R. Evid. 702 (stating that Aa
witness qualified as an expert by knowledge, skill, experience, training, or
education may testify thereto in the form of an opinion@).  Mercante demonstrated that he was familiar
with the PTSD diagnosis and the EMDR technique and that he had worked with
victims of extended sexual abuse. 
Moreover, the evidence demonstrated that PTSD is an accepted diagnosis
in the medical community and that EMDR treatment is used and recognized in the
fields of social work, psychiatry, and psychology.  Therefore, we hold that the trial court did
not abuse its discretion by finding that Mercante was qualified to testify in
this case, by finding that his testimony was reliable, and by allowing Mercante
to offer testimony regarding the PTSD diagnosis and the treatment with the EMDR
technique.  See Martin, 173 S.W.3d at
467; Guzman, 955 S.W.2d at 89.  We overrule Bailey=s second
point.

B.     Hearsay

In his third point, Bailey argues that the trial
court erred by admitting hearsay statements of C.G.  Specifically, Bailey contends that Mercante
and other witnesses testified to statements made by C.G. to them regarding the
allegations against Bailey and that these statements were hearsay and did not
fall into the child outcry exception. 
The State responds that C.G.=s
statements to Mercante were properly admitted as statements made for the
purposes of medical diagnosis or treatment and that Bailey waived error, if
any, with regard to C.G.=s statements to other
witnesses.  








As mentioned above, we review a trial court=s ruling on admissibility or exclusion of evidence
under an abuse of discretion standard and will uphold a trial court=s evidentiary
ruling if it is reasonably supported by the record and is correct under any
theory of applicable law.  See Guzman,
955 S.W.2d at 89; Hall, 13 S.W.3d at 120; see also Martin, 173
S.W.3d at 467.  Texas Rule of Evidence
803(4) provides that A[s]tatements made for purposes of medical diagnosis or
treatment and describing medical history, or past or present symptoms, pain, or
sensations, or the inception or general character of the cause or external
source thereof insofar as reasonably pertinent to diagnosis or treatment@ are not excluded
by the hearsay rule even though the declarant is available as a witness.  Tex.
R. Evid. 803(4).

A review of the
record demonstrates that C.G. testified that as part of her counseling, she
told Mercante what Bailey did to her. 
C.G. stated that it was her understanding that she needed to tell
Mercante what happened in order for her to get treatment.  Mercante testified outside the jury=s presence that he
makes patients aware of the importance of telling the truth because he is
seeing them for the purpose of medical diagnosis and treatment.  








Bailey relies on
his argument under his second point that Mercante=s testimony does
not establish the necessary requisites to allow hearsay under the medical
treatment or diagnosis exception. 
However, we held above that the trial court did not err by finding that
Mercante was qualified to testify on PTSD because he met the qualifications to
testify as an expert on this topic. 
Consequently, we hold that Mercante=s testimony
retelling C.G.=s interactions with Bailey, which were told to him for
the purpose of C.G.=s medical diagnosis or treatment, was not excluded by
the hearsay rule and was therefore admissible.[5]  See Tex.
R. Evid. 803(4); Horner v. State, 129 S.W.3d 210, 219-20 (Tex.
App.CCorpus Christi 2004, pet. ref=d) (holding that
medical social worker=s testimony related to victim=s statements was
properly admitted pursuant to rule 803(4)), cert. denied, 546 US
1116(2005); Puderbaugh v. State, 31 S.W.3d 683, 685 (Tex. App.CBeaumont 2000,
pet. ref=d) (holding that trial court did not err by admitting
social worker=s testimony under rule 803(4)).

Bailey also argues
in his third point that A[o]ther witnesses also testified as to statements made
by [C.G.] regarding her allegations against [Bailey], also over objection.@  However, Bailey=s argument does
not point this court to the statements and objections he is referring to; he
cites to no specific portion of the record. 
We therefore cannot determine his specific complaint; we hold that this
particular sub complaint has been forfeited. 
See Tex. R. App. P.
38.1(h) (stating that Abrief must contain a clear and concise argument for
the contentions made, with appropriate citations to authorities and to the
record@). We overrule Bailey=s third point.








C.     No Double Jeopardy Violation

In his fourth point, Bailey contends that the
trial court=s charge erroneously allowed the
jury to convict him on both a greater and a lesser included offense arising out
of the same conduct, aggravated sexual assault of a child by penetration,
alleged to have occurred on December 15, 1999, and indecency with a child by
contacting the genitals of a child on December 15, 1999.  Bailey contends that the double jeopardy
prohibition against two convictions was violated here because the conduct that
constituted indecency with a child by sexual contactCthat is,
touching the genitals of the victimCwas
necessarily subsumed by the conduct that constituted aggravated sexual assault
of a child under fourteen years of age by penile penetration of the victim.

The Double Jeopardy Clause of the United States
Constitution provides that no person shall be subjected to twice having life or
limb in jeopardy for the same offense. 
U.S. CONST. amend. V.  Generally, this
clause protects against (1) a second prosecution for the same offense after
acquittal, (2) a second prosecution for the same offense after conviction, and (3)
multiple punishments for the same offense. 
Brown v. Ohio, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); Ex
parte Herron, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990) (op. on reh=g).








To determine whether both offenses are the same,
we must examine the elements of the applicable statutes to determine whether
each statute Arequires proof of an additional
fact which the other does not.@  Blockburger v. United States, 284 U.S.
299, 304, 52 S. Ct. 180, 182 (1932); see United States v. Dixon, 509
U.S. 688, 696, 113 S. Ct. 2849, 2856 (1993); Parrish v. State, 869
S.W.2d 352, 353-55 (Tex. Crim. App. 1994). 


At the outset, we note that at trial, Bailey did
not make a double jeopardy objection per se. 
He argued that indecency fondling is a lesser included offense of sexual
assault; thus, he argued that the State could not get a conviction for
both.  Normally, a failure to
specifically raise a double jeopardy complaint at trial would mean that no
error is preserved for our review.  See
Beltran v. State, 30 S.W.3d 532, 533 n.1 (Tex. App.CSan
Antonio 2000, no pet.).  However, A[i]n
cases where the trial court either knew or should have known of the jeopardy
problem, no purpose is served in enforcing the state procedural rule[,] and the
defendant may assert this interest after trial.@  Id. 
As in Beltran, here the complained-of jeopardy problem consists
of two convictions, before the same judge and jury, arising out of conduct that
occurred during the same criminal episode. 
See id.  The trial
court here should have known of this potential complication, especially in
light of the objection Bailey did make; consequently,  Bailey may argue his double jeopardy claim in
this proceeding.  See id.








An offense is included within another if Ait is
established by proof of the same or less than all the facts required to
establish the commission of the offense charged.@  Tex.
Code Crim. Proc. Ann. art. 37.09 (Vernon 2006).  Courts have held indecency with a child to be
a lesser included offense of aggravated sexual assault, but only under certain
circumstances.  See, e.g., Ochoa v.
State, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998); Cunningham v. State,
726 S.W.2d 151, 153 (Tex. Crim. App. 1987); Beltran, 30 S.W.3d at 534.








Of these cases, Bailey relies on Ochoa.  In Ochoa, the evidence at trial showed
that only one offense had been committed.  Ochoa, 982 S.W.2d at 908.  The State had introduced evidence of only one
sexual offense committed by appellant on the day in question.  Id. at 907.  The child did not testify that appellant
touched her more than once.  Id.  The Ochoa court specifically stated
that a charge on the lesser included offense of indecency with a child, in
addition to aggravated sexual assault, would have been proper, however, Aif the
evidence at trial raised the issue that appellant intended to arouse or gratify
his sexual desire while in the course of committing the alleged penetration.@  Id. at 908.  The court said that our focus as an appellate
court is Awhether the evidence in this
case justified the trial court in submitting instructions that would permit the
jury to convict and sentence appellant both for committing aggravated
sexual assault and for committing indecency with a child@ on a
particular date.  Id. (emphasis
added).

Here, C.G. testified that Bailey inserted his
finger into her vagina before he inserted his penis into her vagina.  C.G. specifically testified, AHe started
the way that he always started, with my legs, my thighs.  He would always insert his finger into
my vagina.@ [Emphasis added.]

Thus, in this case, evidence exists that Bailey
committed more than one sexual offense on the day in question.  Although the two acts were committed in close
temporal proximity, Bailey=s
insertion of his finger into C.G.=s female
sexual organ was a separate and distinct act from his penetration of her female
sexual organ with his penis.  See
Hutchins v. State, 992 S.W.2d 629, 633 (Tex. App.CAustin
1999, pet. ref=d, untimely filed).  Consequently, the record supports the
submission of both aggravated sexual assault and indecency with a child.  Beltran, 30 S.W.3d at 534; see also
Hutchins, 992 S.W.2d at 633 (holding that because appellant had not shown
that his conviction for indecency with a child by contact was based on the same
conduct underlying his conviction for aggravated sexual assault of a child, his
contention that these convictions constituted multiple punishments for the same
offense was without merit).  We overrule
Bailey=s fourth
point.

 








D.     No Proof of Juror Misconduct

In his sixth point, Bailey contends that the
trial court erred by entering a judgment based on an improper jury
verdict.  The State responds that Bailey
has not provided this court with a sufficient record to substantiate this
point, that Bailey has not properly briefed this point and presents nothing for
review, and that, in the alternative, the trial court did not enter judgment
based on an improper jury verdict.  

At issue is the following in camera discussion,
which occurred while the jury was deliberating during the punishment phase,
between the trial court and a juror:

THE COURT: This is Monday
July 7th.  You=re Mr. - -

 

JUROR: [] Stein.

 

THE COURT: You have
something you want to talk about?

 

THE JUROR: I don=t know if it=s anything.  I=ve never been on a jury, so I have nothing to go
on.  Maybe it=s just me, maybe I=m being bothered.  During the deciding whether the defendant was
guilty or not guilty there were - - it was eight to four guilty, and the four
that said, well, we don=t think he=s really guilty were
willing to, in quote, negotiate in the sense on the sexual assault count, no,
we won=t go for that, but we=ll go for the lesser,
quote, unquote, indecency/fondling.  Now
I=m not of those four.  I=m of the other side.

 

THE COURT: Okay.

 








THE JUROR: But they were
willing to go ahead and say we=ll vote he=s guilty of that. 
At the time I didn=t think about it, didn=t know.  I thought it was normal.  Then we=re coming back to the penalty phase, and it
becomes obvious that they think the man is innocent.  I asked why - - if you thought he was
innocent, why did you say we=ll go along, we=ll negotiate.  And they said, well, to get out of here.  Now, that bothers me.  I said, I have a life, too.  I want to go back to my life, but whatever it
takes, we need to do.  So I don=t know.  Now we=re in the penalty part, and, you know, it=s sort of like the same
folks are, well, no, we don=t think he=s guilty, we=ll be doing - - maybe that=s normal jury stuff.

 

THE COURT: I think my
instructions are going to be to go in and work with these people.  It may be this may be discussed later.  You just go back inside and work with the
panel you=re with.  Okay? 
It may be I=ll give you some further
instructions in a little bit.

 

THE JUROR: I just want to
make sure it=s done right.

 

THE COURT: I appreciate
you bringing this to our attention, and you=ve done what you=re supposed to do.  Okay?

 

THE JUROR: Okay.

 

THE COURT: All
right.  Thank you.  Y=all have a good day.

 

(Jury continues
deliberating at 9:30 a.m.) 

 








An inquiry into the validity of a jury verdict is
governed by Texas Rule of Evidence 606(b) and Texas Rule of Appellate Procedure
21.3.  See, e.g., Hines v. State,
3 S.W.3d 618, 620-23 (Tex. App.CTexarkana
1999, pet. ref=d) (holding that rules 606(b)
and 21.3 work together, without conflict, to define jury misconduct and provide
how it may be proved).  Texas Rule of
Evidence 606(b) provides as follows:

Upon an inquiry into the
validity of a verdict or indictment, a juror may not testify as to any matter
or statement occurring during the jury=s deliberations, or to the effect of anything on
any juror=s mind or emotions or
mental processes, as influencing any juror=s assent to or dissent from the verdict or
indictment.  Nor may a juror=s affidavit or any
statement by a juror concerning any matter about which the juror would be
precluded from testifying be admitted in evidence for any of these
purposes.  However, a juror may testify:  (1) whether any outside influence was
improperly brought to bear upon any juror; or (2) to rebut a claim that the
juror was not qualified to serve.

 

Tex. R. Evid. 606(b).  Texas Rule of Appellate Procedure 21.3
provides that a defendant must be granted a new trial Awhen the
verdict has been decided by lot or in any manner other than a fair expression
of the jurors= opinion@ or Awhen the
jury has engaged in such misconduct that the defendant did not receive a fair
and impartial trial.@ 
Tex. R. App. P. 21.3(c),
(g).








In this case, Bailey=s trial
counsel filed an untimely motion for new trial, which did not raise juror
misconduct,[6]
and the trial court held a hearing on the untimely motion for new trial and
denied it.  Because the alleged juror
misconduct was not raised in a motion for new trial and because the trial court
could not grant a new trial sua sponte, the alleged juror misconduct
would normally not be before this court. 
See Dunn v. State, 176 S.W.3d 880, 885 (Tex. App.CFort
Worth 2005, no pet.); see also Tex.
R. App. P. 21.1.  However, to the
extent that Bailey=s allegations of juror
misconduct are before us through the record of the in camera hearing, we
proceed to analyze the alleged misconduct under the only possible applicable
provision of 606(b)Cwhether any outside influence
was improperly brought to bear upon any juror. 
See Tex. R. Evid.
606(b).

In performing an analysis of jury misconduct of
the type alleged here, we find Dunklin v. State instructive.  194 S.W.3d 14, 19-20 (Tex. App.CTyler
2006, no pet.).  In Dunklin, the
appellant=s motion for new trial attached
the affidavit of a juror who stated that he and two other jurors did not
believe that the appellant was guilty but agreed to the guilty verdict because
the other jurors promised to give the appellant probation with no jail
time.  Id. at 19.  The State objected to the admission of the
juror=s
affidavit because the information it contained was a discussion of the jury=s
deliberations, which is a type of information that is not admissible under rule
606(b).  Id. at 20.  The trial court sustained the State=s
objection.  Id.  The court of appeals held that the trial
court did not abuse its discretion by denying a new trial on this ground
because the appellant presented no admissible evidence to support his
allegation of jury misconduct.  Id.








Here, the dialogue between the trial court and
Juror Stein does not reveal that any outside influence was improperly brought
to bear upon the four jurors who allegedly supported a not guilty verdict.  Instead, Juror Stein=s
discussion of the jury=s deliberations establishes the
same type of juror conduct that was at issue in Dunklin, and the trial
and appellate courts held that this type of alleged misconduct could not be
proved by affidavit.  194 S.W.3d at
20.  Consequently, here Bailey did not
and could not have presented evidence in support of his allegation of jury
misconduct because the type of conduct at issue is not admissible as evidence
of misconduct under Texas Rule of Evidence 606(b).  Tex.
R. Evid. 606(b).








Because
we are bound by the rules of appellate procedure and the rules of evidence and
because we have found no contrary authority, we hold that Bailey did not and
could not prove that jury misconduct via outside influence occurred, and thus
the trial court did not err by entering judgment on the jury=s verdict.  See Dunklin, 194 S.W.3d at 20; see
also State v. Krueger, 179 S.W.3d 663, 667-70 (Tex. App.CBeaumont 2005, no pet.)
(holding that trial court erred by granting new trial based on jury misconduct
that he judicially noticed but which appeared only through audible
recollections by the judge presiding over the new trial hearing); Garza v.
State, 82 S.W.3d 791, 794 (Tex. App.CCorpus Christi 2002, no pet.) (holding that trial
court was within its discretion to deny motion for new trial because juror=s comment on appellant=s use of his left hand
did not come from a nonjuror and was thus not an outside influence).  We overrule Bailey=s sixth point.

 

VI.  Trial Counsel Provided Effective Assistance
Of Counsel

In his seventh point, Bailey contends that his
trial counsel provided ineffective assistance. 
The actions and omissions that Bailey complains of include his trial
counsel=s (1)
failure to properly address the untimely Brady disclosure of exculpatory
evidence by the State; (2) failure to properly prepare for the testimony of the
State=s expert
witness, Ron Mercante, and the presentation of an expert in response who was
unqualified to rebut Mercante=s
claims; (3) failure to properly and timely establish claims that the EMDR
therapy conducted on C.G. amounted to hypnosis, which rendered her statements unreliable;
(4) failure to properly investigate witnesses who could provide exculpatory
testimony and failure to compel their appearance during the guilt-innocence
phase of trial; (5) failure to establish a record regarding the State=s
interactions with Alisha Clark; (6) waiver of Bailey=s right
to provide an opening statement to the jury; (7) failure to timely address
allegations of juror misconduct raised during trial; and (8) failure to timely
file a motion for new trial allowing the further development of juror
misconduct.








To establish ineffective assistance of counsel,
appellant must show by a preponderance of the evidence that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62-63
(Tex. Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999); Hernandez v. State, 988 S.W.2d 770, 770 (Tex.
Crim. App. 1999).








In evaluating the effectiveness of counsel under
the first prong, we look to the totality of the representation and the
particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  The issue is whether
counsel=s
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688-89,
104 S. Ct. at 2065.  Review of counsel=s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel=s conduct fell within a wide
range of reasonable representation.  Salinas,
163 S.W.3d at 740; Mallett, 65 S.W.3d at 63.  A reviewing court will rarely be in a
position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Thompson, 9
S.W.3d at 813-14.  AIn the
majority of cases, the record on direct appeal is undeveloped and cannot
adequately reflect the motives behind trial counsel=s
actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).  To overcome the
presumption of reasonable professional assistance, Aany
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.@  Id., (quoting Thompson, 9
S.W.3d at 813).

The second prong of Strickland requires a
showing that counsel=s errors were so serious that
they deprived the defendant of a fair trial, i.e., a trial whose result is
reliable.  Strickland, 466 U.S. at
687, 104 S. Ct. at 2064.  In other words,
appellant must show there is a reasonable probability that, but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Id. at 694, 104 S. Ct.
at 2068.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.  Id. 
The ultimate focus of our inquiry must be on the fundamental fairness of
the proceeding whose result is being challenged.  Id. at 697, 104 S. Ct. at 2070.

With regard to Bailey=s first
allegation of ineffective assistance of counsel related to the timing of the
State=s
disclosure of Brady material, we held above that the State disclosed the
exculpatory evidence as soon as it came into its possession, and therefore no Brady
violation occurred.  Consequently, Bailey=s first
allegation of ineffective assistance cannot stand.













With regard to Bailey=s
second, third, fourth, and fifth claims of ineffective assistance of counsel,
the record does not reflect that trial counsel rendered ineffective
assistance.  For instance, the record
demonstrates that Bailey=s trial counsel thoroughly
cross-examined Mercante, dispelling Bailey=s
argument that his trial counsel failed to properly prepare for Mercante=s
testimony.  With regard to Bailey=s
allegation that his trial counsel failed to properly establish that EMDR
therapy amounted to hypnosis, his own expert could not testify to this, and
there is no evidence in the record that this could be established;
consequently, Bailey=s trial counsel cannot be
ineffective based on this unsubstantiated allegation.  Additionally, the record is silent with
regard to Bailey=s trial counsel=s
decision to not call Cage to testify to rebut Mercante=s
testimony, his decision to not file a continuance to investigate Clark=s
exculpatory testimony, his decision to not call Clark to testify during the
guilt-innocence phase, and his decision to not develop a record regarding the
State=s
interactions with Clark.  Moreover,
Bailey=s trial
counsel=s
decision to waive opening statement could have been a trial tactic. Because
these allegations of ineffectiveness are not firmly founded in the record,
Bailey has not rebutted the presumption that his trial counsel=s
decisions were reasonable.  See
Salinas, 163 S.W.3d at 740 (quoting Thompson, 9 S.W.3d at 813); see
also Valdes-Fuerte v. State, 892 S.W.2d 103, 112 (Tex. App.CSan
Antonio 1994, no pet.) (stating that when there is nothing in the record to
reflect trial counsel=s decisions for his inaction,
and plausible explanations exist, appellate court should presume trial counsel
made all significant decisions in the exercise of professional judgment).

With regard to Bailey=s
allegation that his trial counsel was ineffective for failing to timely file a
motion for new trialCeven if the failure to timely
file a motion for new trial constitutes ineffective assistance of counsel, in
this case the record does not establish a reasonable probability that, but for
counsel=s
alleged unprofessional error, the result of the proceeding would have been
different.  See Strickland, 466
U.S. at 694, 104 S. Ct. at 2068.  Here,
even though Bailey=s motion for new trial was
untimely, the trial court heard it and denied it.  And as discussed above, the alleged jury
misconduct alleged here could not be established via affidavits and a motion
for new trial in any event.  See Tex. R. Evid. 606(b).  Because the complaints raised in Bailey=s
untimely motion for new trial were actually heard by the trial court and
because the jury misconduct issue could not have been raised in a motion for
new trial, no reasonable probability exists that, but for counsel=s
failure to timely file a motion for new trial and to raise the alleged jury
misconduct in that motion for new trial, the result of the proceeding would
have been different.  See Strickland,
466 U.S. at 694, 104 S. Ct. at 2068.








Because Bailey=s
allegations of ineffectiveness are not firmly founded in the record, we hold
that his trial counsel did not provide ineffective assistance.  We overrule Bailey=s
seventh point.

VII.  Conclusion

Having overruled Bailey=s seven
points, we affirm the trial court=s
judgment.

 

SUE
WALKER

JUSTICE

 

PANEL A: LIVINGSTON,
HOLMAN, and WALKER, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: January 11,
2007

 

 











[1]See Tex. R. App. P. 47.4.





[2]Brady v. Maryland, 373 U.S. 83, 83 S. Ct.
1194 (1963).





[3]Bailey=s motion is not in the
record before us, but we have the transcript from the hearing.





[4]Although neither the
State nor Bailey called Clark as a witness during guilt-innocence, the State
called her to testify at punishment. 





[5]The State concedes that
because C.G. was thirteen years old at the time Bailey first assaulted her, the
child outcry exception is not applicable. 
See Tex. Code Crim. Proc.
Ann. art. 38.072 (Vernon 2006). 
However, having held that the testimony C.G. related to Mercante was
properly admitted under Texas Rule of Evidence 803(4), we need not address this
subpoint further.  See Tex. R. App. P. 47.1.





[6]The record does not
reveal when Bailey learned of the in camera hearing.